CLOSED

## U.S. District Court
## Northern District of Alabama (Northeastern)
## CRIMINAL DOCKET FOR CASE #: 5:25−mj−01215−HNJ All Defendants
### *Internal Use Only*

Case title: USA v. Raymond

Date Filed: 11/19/2025

Other court case number:  8:25−cr−530−CEH−LSG Middle
District of Florida

Date Terminated: 11/26/2025

Assigned to: Magistrate Judge
Herman N Johnson, Jr

### Defendant (1)

**Brian Curtis Raymond**
*TERMINATED: 11/26/2025*

represented by **Michael Ryan Pillsbury**
Maynard Nexsen PC
655 Gallatin Street SW
Huntsville, AL 35801
256−551−0171
Email: mpillsbury@maynardnexsen.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*
*Designation: Limited Appearance*

### Pending Counts

None

### Highest Offense Level
### (Opening)

None

### Terminated Counts

None

### Highest Offense Level
### (Terminated)

None

### Complaints

18:554.F

### Disposition

### Disposition

### Disposition

### Disposition

### Plaintiff

**USA**

represented by **Prim F. Escalona, US Attorney**
US ATTORNEY'S OFFICE
1801 4th Avenue North
Birmingham, AL 35203−2101
244−2001
Email: Caseview.ecf@usdoj.gov
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*
*Designation: Retained*

**US Probation**

TRUE COPY:

By: _____

UNITED STATES PROBATION OFFICE
Robert Vance Bldg.
1800 5th Avenue North
Birmingham, AL 35203
205−716−2900
Email: alnpdb_cmecf@alnp.uscourts.gov
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*
*Designation: Retained*

**USM**
UNITED STATES MARSHAL
Hugo Black Courthouse, Room 240
1729 5th Avenue North
Birmingham, AL 35203
205−731−1712
Email: usms−aln−courts@usdoj.gov
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*
*Designation: Retained*

**John Mark Hundscheid**
U.S. ATTORNEY'S OFFICE
200 Davis Circle SW
Suite 300
Huntsville, AL 35801
256−551−7354
Email: john.hundscheid@usdoj.gov
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*
*Designation: Retained*

| Date Filed | # | Docket Text |
|---|---|---|
| 11/19/2025 | | Arrest (Rule 5) of Brian Curtis Raymond (SHB) (Entered: 11/22/2025) |
| 11/19/2025 | 1 | RULE 5 INDICTMENT from MDFL by USA as to Brian Curtis Raymond (SHB) (Entered: 11/22/2025) |
| 11/19/2025 | | Minute Entry for proceedings held before Magistrate Judge Herman N Johnson, Jr: Initial Appearance in Rule 5(c)(3) Proceedings as to Brian Curtis Raymond held on 11/19/2025; Mike Pillsbury present for dft for limited purpose of proceedings in this district; John Hundscheid present for govt; USPO King present; dft waived identity hearing; charges and rights explained; govt acknowledged Brady obligations; court advised dft re Rule 20 − acknowledgement by dft; govt amenable to unsecured bond at this time w/ leave to reopen bond hearing upon motion for surety bond to allow dft time to obtain documents discussed during pre−hearing conference with counsel − granted; dft ordered released on $300,000 u/s bond w/ conditions set out; hrg adj. (Court Reporter None) (SHB) (Entered: 11/22/2025) |
| 11/19/2025 | 2 | WAIVER of Rule 5 Hearings by Brian Curtis Raymond (SHB) (SHB, ). (Entered: 11/22/2025) |
| 11/19/2025 | 3 | Unsecured Bond Entered as to Brian Curtis Raymond in amount of $300,000 with order setting conditions of release attached. (SHB) (SHB, ). (Entered: 11/22/2025) |
| 11/23/2025 | 4 | MOTION to Modify Conditions of Release by USA as to Brian Curtis Raymond. (Hundscheid, John) (Entered: 11/23/2025) |
| 11/24/2025 | 5 | TEXT ORDER as to Brian Curtis Raymond re 4 MOTION to Modify Conditions of Release filed by USA: Motion Hearing set for 11/24/2025 at 2:30 PM in the U.S. Courthouse, 660 Gallatin Street SW, Courtroom III, Huntsville, AL before the undersigned. Signed by Magistrate Judge Herman N Johnson, Jr on 11/24/25. (SHB) (Entered: 11/24/2025) |

| 11/24/2025 | | Minute Entry for proceedings held before Magistrate Judge Herman N Johnson, Jr: Motion/Bond Hearing as to Brian Curtis Raymond held on 11/24/2025; Mike Pillsbury present for dft; Davis Barlow present for govt; USPO Spaldi present; dft presents as surety; dft sworn; inquiry of dft by court regarding property documentation provided; no inquiry by govt; dft acknowledges and accepts obligations as surety; court GRANTS govt's motion to modify bond; court modifies bond to a secured bond of $400,000 w/ conditions set out and approves dft as surety; hrg adj. (Court Reporter Christina Decker) (SHB) (Entered: 11/26/2025) |
|---|---|---|
| 11/24/2025 | 6 | Surety Bond Entered as to Brian Curtis Raymond in amount of $400,000 with conditions of release, justification of Brian Curtis Raymond as surety and promissory note attached. (SHB). (Additional attachment(s) added on 11/26/2025: # 1 Exhibit Tax Assessment, # 2 Exhibit Mortgage Statement, # 3 Exhibit Property Deed, # 4 Exhibit Property Appraisal) (SHB). (Entered: 11/26/2025) |
| 11/26/2025 | 7 | ORDER REQUIRING A DEFENDANT TO APPEAR IN THE DISTRICT WHERE CHARGES ARE PENDING AND TRANSFERRING BAIL as to Brian Curtis Raymond. Signed by Magistrate Judge Herman N Johnson, Jr on 11/26/25. (SHB) (Entered: 11/26/2025) |

FILED

2025 Nov-22  PM 05:26
U.S. DISTRICT COURT
N.D. OF ALABAMA

# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## TAMPA DIVISION

NOV 13 2025 PM4:06
FILED - USDC - FLMD - TPA

UNITED STATES OF AMERICA

    v.

HON NING HO,
  a/k/a "Mathew Ho,"
BRIAN CURTIS RAYMOND,
CHAM LI,
  a/k/a "Tony Li," and
JING CHEN,
  a/k/a "Harry Chen"

CASE NO. 8:25-cr-530-CEH-LSG

50 U.S.C. § 4819
(Conspiracy to Violate and
Violations of Export Control
Reform Act)
18 U.S.C. § 554
(Smuggling)
18 U.S.C. § 1956(h)
(Conspiracy to Commit Money
Laundering)
18 U.S.C. § 1956(a)(2)
(Money Laundering)

## **INDICTMENT**

The Grand Jury charges:



## **COUNT 1**
### (Conspiracy to Violate Export Control Reform Act of 2018)
### (50 U.S.C. § 4819)

### A.   **Introduction**

At times material to this Indictment:

1.    Janford Realtor, LLC, was a Limited Liability Company registered in Florida in March 2023. The registered address of Janford Realtor, LLC, was in Tampa, Florida. Despite its name, Janford Realtor, LLC was never involved in any real estate transactions. Instead, the company served as an intermediary for several unlawful and unlicensed exports to the People's Republic of China ("PRC") of

advanced and highly-controlled U.S.-origin Graphics Processing Units ("GPUs") with artificial intelligence ("AI") and supercomputing applications.

2.      Defendant HON NING HO, a/k/a "Mathew Ho," was a United States citizen residing in Tampa, Florida, who was born in Hong Kong. HO was the registered agent of Janford Realtor, LLC and identified as a manager of Janford Realtor, LLC in the Florida registration paperwork.

3.      Defendant CHAM LI, a/k/a "Tony Li," was a Chinese national residing in California. LI was also identified as a manager of Janford Realtor, LLC in the Florida registration paperwork.

4.      U.S. Company 1 was a distributor of U.S. technology products based in Huntsville, Alabama. U.S. Company 1 was licensed to sell NVIDIA GPUs, among other products.

5.      Defendant BRIAN CURTIS RAYMOND was a United States citizen residing in Huntsville, Alabama. RAYMOND was the Chief Executive Officer and sole owner of U.S. Company 1.

6.      Chinese Company 1 was a Chinese company registered in Hong Kong.

7.      Defendant JING CHEN, a/k/a "Harry Chen," was a Chinese national who entered the United States on an F-1 nonimmigrant student visa and was residing in Tampa, Florida.

8.      Chinese Company 2 was a Chinese company registered in Hong Kong.

2

## B.     Relevant Statutory and Legal Background
## The Export Control Reform Act and Export Administration Regulations

9.      The Export Control Reform Act ("ECRA") provides, among other

things, that the national security and foreign policy of the United States require that

the export, reexport, and in-country transfer of items be controlled, 50 U.S.C. § 4811,

and grants the President the authority to control such activities, 50 U.S.C. § 4812.

ECRA further grants to the Secretary of Commerce the authority to establish the

applicable regulatory framework. 50 U.S.C. § 4813.

10.      The Export Administration Regulations ("EAR"), 15 C.F.R. Parts 730-

774, restricts the export of items for national security, foreign policy, and other

interests of the United States as reflected in international obligations and

arrangements. 15 C.F.R. § 730.6. It also restricts exports of items that could make

significant contributions to the military potential of other nations or that could be

detrimental to the foreign policy or national security of the United States. Id. § 742.4.

The EAR imposes licensing and other requirements for items subject to the EAR to

be lawfully exported from the United States or lawfully reexported from one foreign

destination to another. Id. § 730.7.

11.      The most sensitive items subject to EAR controls are identified on the

Commerce Control List ("CCL"), published at Title 15, Code of Federal

Regulations, Part 774, Supplement Number 1. Items on the CCL are categorized by

an Export Control Classification Number ("ECCN") based on their technical

3

characteristics. Each ECCN has export control requirements depending on the destination, end user, and end use.

12.     The PRC is rapidly developing exascale supercomputing capabilities and has announced its intent to become the world leader in AI by 2030. These capabilities are being used by the PRC for its military modernization efforts and in connection with the PRC's weapons design and testing, including for weapons of mass destruction, as well as in connection with the PRC's development and deployment of advanced AI surveillance tools. Interim Final Rule, Implementation of Additional Export Controls: Certain Advanced Computing and Semiconductor Manufacturing Items; Supercomputer and Semiconductor End Use; Entity List Modification, 87 Fed. Reg. 62186 (effective Oct. 7, 2022).

13.     To protect United States national security and foreign policy interests, beginning on October 7, 2022, BIS amended the EAR to implement new controls on the export of advanced computing integrated circuits ("ICs"), computer commodities that contain ICs, and certain semiconductor manufacturing items. See id. Among other things, these restrictions imposed a licensing requirement for exports, reexports, and transfers (in-country) to or within the PRC (including Hong Kong) for items classified on the CCL under ECCN 4A090, as well as associated software and technology. Id.; see also 15 C.F.R. § 742.6(a)(6).

14.     At all times relevant to this indictment, NVIDIA A100 Graphics Processing Units ("GPUs"), H100 and H200 GPUs, and PNY GE Force RTX 4090

GPUs were classified on the CCL under ECCN 4A090.a. Therefore, these items required a license for export or reexport to the PRC (including Hong Kong).

15. At no time relevant to this Indictment did HO, RAYMOND, LI, CHEN, their conspirators, or any of their companies apply for, receive, or possess a license from BIS to export or reexport any items classified on the CCL, including items classified as ECCN 4A090.a, to the PRC (including Hong Kong), Malaysia, or Thailand.

## Export and Shipping Records

16. Pursuant to U.S. law and regulations, exporters or their authorized agents, such as shippers or freight forwarders, are required to file certain forms and declarations concerning the export of goods and technology from the United States. Typically, those documents are filed electronically through the Automated Export System ("AES"), which is administered by the U.S. Department of Homeland Security, Customs, and Border Protection ("CBP").

17. The Electronic Export Information ("EEI") (formerly known as the Shipper's Export Declaration) is the required documentation submitted to the U.S. Government through the AES in connection with an export shipment from the United States. Exporters or their authorized agents are required to file accurate and truthful EEI for every export of goods from the United States with a value of $2,500 or more. The EEI is also required regardless of the value of the goods if the goods require an export license. 15 C.F.R. §§ 30.2, 758.1.

18.     The purpose of these requirements is to strengthen the U.S. Government's ability to prevent the export of certain items to unauthorized destinations and end users because the EEI and AES aid in targeting, identifying, and when necessary, confiscating suspicious or illegal shipments prior to export. 15 C.F.R. § 30.1(b).

19.     In addition, the BIS-711 Form, titled "Statement by Ultimate Consignee and Purchaser," is a form submitted to the Department of Commerce by exporters, shippers, and freight forwarders that requires the identification of the end user and end use of goods to be exported from the United States. See 15 C.F.R. § 748.11. The BIS-711 Form seeks assurances from the ultimate consignee and purchaser that the items will not be misused, transferred, or reexported in violation of the EAR. The BIS-711 Form requires the ultimate consignee and purchaser to certify, among other things, that all of the facts contained in the form are true and correct and to acknowledge that the making of any false statements or concealment of any material fact in connection with the form may result in imprisonment or fine, or both, and denial, in whole or in part, of participation in U.S. exports and reexports.

20.     A material part of the EEI and AES, as well as other export filings, including the BIS-711 Form, is information concerning the end user and ultimate destination of the export. The identity of the end user may determine whether the goods: (a) may be exported without any specific authorization or license from the

U.S. Government; (b) may be exported with the specific authorization or license from the U.S. Government; or (c) may not be exported from the United States.

### B.   <u>The Conspiracy</u>

21.   Beginning in or around September 2023, the exact date being unknown to the Grand Jury, and continuing until in or around the date of this Indictment, in the Middle District of Florida, and elsewhere, the defendants,

<div align="center">

**HON NING HO,**
**a/k/a "Mathew Ho,"**
**BRIAN CURTIS RAYMOND,**
**CHAM LI,**
**a/k/a "Tony Li," and**
**JING CHEN,**
**a/k/a "Harry Chen,"**

</div>

did knowingly and willfully combine, conspire, and agree with each other and other persons, known and unknown to the Grand Jury:

(a) to export and cause to be exported, from the United States to the PRC, items on the Commerce Control List, 15 C.F.R. Part 774, Supplement Number 1, that is, Graphics Processing Units, without first having obtained a license or other written authorization for such export from the Department of Commerce, in violation of 50 U.S.C. § 4819(a)(1) and (2)(A) and 15 C.F.R. §§ 736.2, 742.6, and 764.2; and

(b) to engage in transactions and take actions with intent to evade the provisions of the Export Control Reform Act and the Export

Administration Regulations, in violation of 50 U.S.C. § 4819(a)(1) and

(2)(G) and 15 C.F.R. § 764.2.

### C.   <u>Manner and Means</u>

22.     The manner and means by which the co-conspirators sought to

accomplish the objects of the conspiracy included, among others:

a.      It was part of the conspiracy that co-conspirators, including HO,

LI, and CHEN, would and did seek to identify customers in the PRC who wanted to

purchase NVIDIA GPUs;

b.      It was further part of the conspiracy that co-conspirators in the

PRC and elsewhere would and did place orders for NVIDIA GPUs from Janford

Realtor LLC and U.S. Company 1, including through HO and CHEN;

c.      It was further part of the conspiracy that co-conspirators,

including HO, would and did purchase NVIDIA GPUs from vendors, including

RAYMOND and U.S. Company 1;

d.      It was further part of the conspiracy that co-conspirators would

and did send money via wire transfer from the PRC and elsewhere, including from

bank accounts belonging to Chinese Company 1 and Chinese Company 2, to co-

conspirators in the United States to purchase NVIDIA GPUs;

e.      It was further part of the conspiracy that co-conspirators,

including HO and RAYMOND, would and did cause freight forwarders to ship

NVIDIA GPUs to third countries, knowing that the GPUs were ultimately destined

for and would be transshipped to the PRC;

f. It was further part of the conspiracy that co-conspirators, including HO and RAYMOND, would and did submit Shipper's Letters of Instructions containing false and fraudulent information, including false information about the ultimate consignee of the NVIDIA GPUs, the value of the GPUs, and the licenses required for their export, which caused shipping companies to file EEIs containing the same false information;

g. It was further part of the conspiracy that co-conspirators would and did pay "kickbacks" or commissions to each other for the sale and export of NVIDIA GPUs to the PRC;

h. It was further part of the conspiracy that co-conspirators, including HO, would and did create fake contracts and other documentation that— by creating fictitious and false purported end uses for the NVIDIA GPUs in Malaysia and Thailand—were intended to evade the operative export controls and license requirements for exporting NVIDIA GPUs to the PRC;

i. It was further part of the conspiracy that co-conspirators, including HO, RAYMOND, LI, and CHEN, would and did discuss ways to evade United States export laws and regulations, including by transshipping NVIDIA GPUs to the PRC through third countries, concealing the source of payment from the GPU suppliers, and creating fake documentation;

j. It was further part of the conspiracy that co-conspirators, including HO, LI, and CHEN, would and did communicate with co-conspirators in

9

Malaysia, Thailand, and the PRC in order to facilitate the transshipment of NVIDIA GPUs exported from the United States to the PRC;

  k. It was further part of the conspiracy that co-conspirators would and did facilitate the transshipment of NVIDIA GPUs exported from the United States to the PRC through third countries;

  l. It was further part of the conspiracy that co-conspirators would and did employ various techniques to protect their anonymity and to thwart detection of their activities by United States government and law-enforcement agencies; and

  m. It was further part of the conspiracy that co-conspirators would and did perform acts and make statements to misrepresent, hide, and conceal, and cause to be misrepresented, hidden, and concealed, the purpose of the conspiracy and the acts committed in furtherance thereof.

All in violation of 50 U.S.C. § 4819.

### COUNTS 2 to 5
(Violations of the Export Control Reform Act of 2018)
(50 U.S.C. § 4819)

1. The allegations in paragraphs 1 through 20 of Count 1 of this Indictment are realleged and incorporated by reference as though fully set forth herein.

2. On or about the date specified in each count below, in the Middle District of Florida and elsewhere, the defendants as specified in each count below, aided and abetted by each other and by others known and unknown to the Grand

Jury, did willfully export and cause to be exported, and attempt to export and cause

to be exported, from the United States to the PRC, items on the Commerce Control

List, 15 C.F.R. Part 774, Supplement Number 1, that is, Graphics Processing Units,

without first having obtained a license or other written authorization for such export

from the Department of Commerce:

| Ct. | Defendants | Approx. Date Range | Description of Export | ECCN |
|---|---|---|---|---|
| 2 | HON NING HO, a/k/a "Mathew Ho," CHAM LI, a/k/a "Tony Li," and JING CHEN, a/k/a "Harry Chen" | October 25, 2024, to December 6, 2024 | Export of approx. 150 NVIDIA A100 GPUs from the United States to the PRC, transshipped through Malaysia | 4A090.a |
| 3 | HON NING HO, a/k/a "Mathew Ho" | January 13, 2025, to January 25, 2025 | Export of approx. 250 NVIDIA A100 GPUs from the United States to the PRC, transshipped through Malaysia | 4A090.a |
| 4 | HON NING HO, a/k/a "Mathew Ho," and BRIAN CURTIS RAYMOND | January 2025, to July 31, 2025 | Attempted export of approx. 50 NVIDIA H200 GPUs from the United States to the PRC, transshipped through Thailand | 4A090.a |
| 5 | HON NING HO, a/k/a "Mathew Ho," and BRIAN CURTIS RAYMOND | March 2025 to May 15, 2025 | Attempted export of approx. 10 Hewlett Packard Enterprises supercomputers containing NVIDIA H100 GPUs from the United States to the PRC, transshipped through Thailand | 4A090.a |

In violation of 50 U.S.C. § 4819 and 15 C.F.R. §§ 736.2, 742.6, and 764.2.

## COUNTS 6 TO 8
(Smuggling Goods from the United States)
(18 U.S.C. § 554)

1.      The allegations in paragraphs 1 through 20 of Count 1 of this Indictment are hereby realleged and incorporated by reference as though fully set forth herein.

2.      On or about the date specified in each Count below, in the Middle District of Florida and elsewhere, the defendants specified in each count below, aided and abetted by each other and by others known and unknown to the Grand Jury, did fraudulently and knowingly export and send from the United States, and attempt to export and send from the United States, merchandise, articles, and objects as specified in each count below, contrary to a law and regulation of the United States, specifically, 13 U.S.C. § 305 and 15 C.F.R. Part 30:

| Ct. | Defendants | Approx. Date Range | Description of Export |
|---|---|---|---|
| 6 | HON NING HO, a/k/a "Mathew Ho," CHAM LI, a/k/a "Tony Li," and JING CHEN, a/k/a "Harry Chen" | October 25, 2024, to December 6, 2024 | Export of approx. 150 NVIDIA A100 GPUs from the United States to the PRC, transshipped through Malaysia, with EEI containing false information, including false information about the ultimate consignee, country of ultimate destination, and license requirement |
| 7 | HON NING HO, a/k/a "Mathew Ho" | January 13, 2025, to January 25, 2025 | Export of approx. 250 NVIDIA A100 GPUs from the United States to the PRC, transshipped through Malaysia, with EEI containing false information, including false information about the ultimate consignee, country of ultimate destination, and license requirement |

12

| 8 | HON NING HO, a/k/a "Mathew Ho," and BRIAN CURTIS RAYMOND | January 2025, to July 31, 2025 | Attempted export of approx. 50 NVIDIA H200 GPUs from the United States to the PRC, transshipped through Thailand, with EEI containing false information, including false information about the ultimate consignee and country of ultimate destination, and license requirement |

In violation of 18 U.S.C. §§ 554(a) and 2.

## COUNT 9
(Conspiracy to Commit Money Laundering)
(18 U.S.C. § 1956(h))

### A.    Introduction

1.    The allegations contained in Counts 1 through 8 of this Indictment are hereby realleged and incorporated by reference as though fully set forth herein.

### B. The Conspiracy

2.    Beginning in or around September of 2023, and continuing until the date of this Indictment, in the Middle District of Florida, and elsewhere, the defendants,

HON NING HO,
a/k/a "Mathew Ho,"
BRIAN CURTIS RAYMOND,
CHAM LI,
a/k/a "Tony Li," and
JING CHEN,
a/k/a "Harry Chen,"

did knowingly and voluntarily combine, conspire, and agree with other persons, known and unknown to the Grand Jury, to transmit and transfer funds, that is,

13

United States currency held in bank accounts, from a place outside the United States, that is, the PRC, to a place in the United States, that is, Florida and Alabama, with the intent to promote the carrying on of specified unlawful activity, that is, smuggling, in violation of 18 U.S.C. § 554, in violation of 18 U.S.C. § 1956(a)(2).

## C. **Manner and Means**

3.     Paragraphs 22(a) through (m) of Count 1 of this Indictment are hereby realleged and incorporated by reference as though fully set forth herein.

All in violation of 18 U.S.C. § 1956(h).

## **COUNTS 10 to 18**
(Money Laundering)
(18 U.S.C. § 1956(a)(2))

1.     The allegations contained in Counts 1 through 9 of this Indictment are hereby realleged and incorporated by reference as though fully set forth herein.

2.     On the dates specified in each count below, in the Middle District of Florida and elsewhere, the defendant specified in each count below, aided and abetted by others known and unknown to the Grand Jury, transmitted and transferred funds, that is, United States currency held in bank accounts, from a place outside the United States, that is, the PRC, to a place in the United States, that is, Florida and Alabama, with the intent to promote the carrying on of specified unlawful activity, that is, smuggling, in violation of 18 U.S.C. § 554, as specified in each count below:

14

| Ct. | Defendants | Date | Financial Transaction |
|---|---|---|---|
| 10 | HON NING HO, a/k/a "Mathew Ho" | November 20, 2024 | Wire transfer in the amount of approx. $237,248 from a bank account belonging to Chinese Company 1 to a Bank of America account belonging to Janford Realtor |
| 11 | HON NING HO, a/k/a "Mathew Ho" | January 16, 2025 | Wire transfer in the amount of approx. $400,308.92 from a bank account belonging to Chinese Company 2 to a Bank of America account belonging to Janford Realtor |
| 12 | HON NING HO, a/k/a "Mathew Ho," and BRIAN CURTIS RAYMOND | March 25, 2025 | Wire transfer in the amount of approx. $249,958.89 from a bank account belonging to Chinese Company 2 to a Bank of America account belonging to U.S. Company 1 |
| 13 | HON NING HO, a/k/a "Mathew Ho," and BRIAN CURTIS RAYMOND | March 27, 2025 | Wire transfer in the amount of approx. $1,150,000.00 from a bank account belonging to Chinese Company 2 to a Bank of America account belonging to U.S. Company 1 |
| 14 | HON NING HO, a/k/a "Mathew Ho," and BRIAN CURTIS RAYMOND | March 28, 2025 | Wire transfer in the amount of approx. $490,000.00 from a bank account belonging to Chinese Company 2 to a Bank of America account belonging to U.S. Company 1 |
| 15 | HON NING HO, a/k/a "Mathew Ho," and BRIAN CURTIS RAYMOND | April 9, 2025 | Wire transfer in the amount of approx. $545,158.88 from a bank account belonging to Chinese Company 2 to a Bank of America account belonging to Janford Realtor |

15

| Ct. | Defendants | Date | Financial Transaction |
|---|---|---|---|
| 16 | HON NING HO, a/k/a "Mathew Ho," and BRIAN CURTIS RAYMOND | April 15, 2025 | Wire transfer in the amount of approx. $272,600 from a bank account belonging to Chinese Company 2 to a Bank of America account belonging to Janford Realtor |
| 17 | HON NING HO, a/k/a "Mathew Ho," and BRIAN CURTIS RAYMOND | April 17, 2025 | Wire transfer in the amount of approx. $272,600 from a bank account belonging to Chinese Company 2 to a Bank of America account belonging to Janford Realtor |
| 18 | HON NING HO, a/k/a "Mathew Ho," and BRIAN CURTIS RAYMOND | April 22, 2025 | Wire transfer in the amount of approx. $272,600 from a bank account belonging to Chinese Company 2 to a Bank of America account belonging to Janford Realtor |

In violation of 18 U.S.C. §§ 1956(a)(2) and 2.

## FORFEITURE ALLEGATIONS

1.      The allegations contained in Counts 1 through 18 are incorporated by reference for the purpose of alleging forfeiture pursuant to 18 U.S.C. §§ 981(a)(1)(C) and 982(a)(1), 28 U.S.C. § 2461(c), 49 U.S.C. § 80303, and 50 U.S.C. § 4819(d).

2.      Upon a conviction of a violation of 50 U.S.C. § 4819, or a conspiracy to violate 50 U.S.C. § 4819, the defendants shall forfeit to the United States, pursuant to 50 U.S.C. § 4819(d):

        a.      Any property, real or personal, used, in any manner, to commit or facilitate the violation;

     b.    Any property, real or personal, constituting or traceable to the gross proceeds taken, obtained, or retained, in connection with or as a result of the violation; and/or

     c.    Any property constituting an item or technology that is exported or intended to be exported as a result of the violation.

3.    Upon conviction of a violation of 18 U.S.C. § 554, or a conspiracy to violate 18 U.S.C. § 554, the defendant shall forfeit to the United States, pursuant to 18 U.S.C. § 981(a)(1)(C) and 28 U.S.C. § 2461(c), any property, real or personal, which constitutes or is derived from proceeds traceable to the violation.

4.    Upon conviction of conspiracy to violate or violation of 18 U.S.C. § 1956, the defendant shall forfeit to the United States, pursuant to 18 U.S.C. § 982(a)(1), any property, real or personal, involved in the offense or traceable to such property.

5.    The property to be forfeited includes, but is not limited to, fifty (50) NVIDIA H200 GPUs, that are in the custody of Homeland Security Investigations in Tampa, Florida.

6.    If any of the property described above, as a result of any act or omission of the defendants:

     a.    cannot be located upon the exercise of due diligence;

     b.    has been transferred or sold to, or deposited with, a third party;

     c.    has been placed beyond the jurisdiction of the court;

     d.    has been substantially diminished in value; or

17

e.   has been commingled with other property which cannot be

divided without difficulty,

the United States shall be entitled to forfeiture of substitute property pursuant to 21

U.S.C. § 853(p), as incorporated by 28 U.S.C. § 2461(c) and 18 U.S.C. § 982(b)(1).

A TRUE B█████

_____

Foreperson

GREGORY W. KEHOE
United States Attorney

By: _____

Daniel M. Baeza
Assistant United States Attorney
Chief, National Security and
International Narcotics Section

By: _____

Joseph K. Ruddy
Assistant United States Attorney

By: _____

Lindsey N. Schmidt
Assistant United States Attorney

JOHN EISENBERG
Assistant Attorney General
National Security Division

By: _____

Menno Goedman
Trial Attorney
Counterintelligence and Export
Control Section

18

FORM OBD-34
November 25

No.

## UNITED STATES DISTRICT COURT
### Middle District of Florida
### Tampa Division

## THE UNITED STATES OF AMERICA

vs.

## HON NING HO, ET AL.

## INDICTMENT

Violations:   50 U.S.C. § 4819; 18 U.S.C. § 554
18 U.S.C. § 1956(h); 18 U.S.C. § 1956(a)(2)

A true bill,

_____
Foreperson

Filed in open court this 13th day

of November, 2025.

_____
Clerk—Karina Nieves

Bail $_____

FILED
2025 Nov-22  PM 05:47
U.S. DISTRICT COURT
N.D. OF ALABAMA

AO 466A (Rev. 12/17)  Waiver of Rule 5 & 5.1 Hearings (Complaint or Indictment)

# UNITED STATES DISTRICT COURT
for the

Northern District of Alabama

FILED

NOV 19 2025

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA

| | | |
|---|---|---|
| United States of America | ) | |
| v. | ) | Case No.    5:25-mj-1215-HNJ |
| | ) | |
| Brian Curtis Raymond | ) | Charging District's Case No.    8:25-cr-530-CEH-LSG |
| *Defendant* | ) | |

## WAIVER OF RULE 5 & 5.1 HEARINGS
### (Complaint or Indictment)

I understand that I have been charged in another district, the *(name of other court)*    Middle District of Florida
.

I have been informed of the charges and of my rights to:

(1)    retain counsel or request the assignment of counsel if I am unable to retain counsel;

(2)    an identity hearing to determine whether I am the person named in the charges;

(3)    production of the warrant, a certified copy of the warrant, or a reliable electronic copy of either;

(4)    a preliminary hearing to determine whether there is probable cause to believe that an offense has been committed, to be held within 14 days of my first appearance if I am in custody and 21 days otherwise, unless I have been indicted beforehand.

(5)    a hearing on any motion by the government for detention;

(6)    request a transfer of the proceedings to this district under Fed. R. Crim. P. 20, to plead guilty.

I agree to waive my right(s) to:

[X]    an identity hearing and production of the warrant.

[X]    a preliminary hearing.

[X]    a detention hearing.

[ ]    an identity hearing, production of the judgment, warrant, and warrant application, and any preliminary or detention hearing to which I may be entitled in this district.  I request that my [ ] preliminary hearing and/or [ ] detention hearing be held in the prosecuting district, at a time set by that court.

I consent to the issuance of an order requiring my appearance in the prosecuting district where the charges are pending against me.

Date:    11/18/2025

_____
*Defendant's signature*

_____
*Signature of defendant's attorney*

Michael R. Pillsbury
*Printed name of defendant's attorney*

FILED
2025 Nov-22 PM 05:49
U.S. DISTRICT COURT
N.D. OF ALABAMA

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ALABAMA**
**NORTHEASTERN DIVISION**

NOV 19 2025

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA

| | |
|---|---|
| **UNITED STATES OF AMERICA** } | |
| } | |
| **v.** } | **NDAL CASE NO. 5:25-mj-1215-HNJ** |
| } | |
| **BRIAN CURTIS RAYMOND** } | |

### APPEARANCE BOND

Non-surety:  I, the undersigned defendant acknowledges that I and my personal representatives, jointly and severally, are bound to pay to the United States of America the sum of **$300,000.00.**

The conditions of this bond are that the defendant is to appear before this court and at such other places as the defendant may be required to appear, in accordance with any and all orders and directions relating to the defendant's appearance in this case, including appearance for violation of a condition of defendant's release as may be ordered or notified by this court or any other United States District Court to which the defendant may be held to answer or the cause transferred (condition of this bond are attached).  The defendant is to abide by any judgment entered in such matter by surrendering to serve any sentence imposed and obeying any order or direction in connection with such judgment.

It is agreed and understood that this is a continuing bond (including any proceeding on appeal or review) which shall continue until such time as the bond is exonerated.

If the defendant appears as ordered or notified and otherwise obeys and performs the foregoing conditions of this bond, then this bond is to be void, but if the defendant fails to obey or perform any of these conditions, payment of the amount of this bond shall be due forthwith.  Forfeiture of this bond for any breach of its conditions may be declared by any United States District Court having cognizance of the above entitled matter at the time of such breach and if the bond is forfeited and if the forfeiture is not set aside or remitted, judgment may be entered upon motion in such United States District Court against each debtor jointly and severally for the amount above stated, together with interest and costs, and execution may be issued and payment secured as provided by the Federal Rules of Criminal Procedure and any other laws of the United States.

This bond is signed on November 19, 2025 at Huntsville, Alabama.

_____
Defendant's Signature

Brian Raymond
_____
Defendant's Printed Name

10 Old Stonebank Ln. NW
_____
Mailing Address

Huntsville, AL 35806
_____
City, State, Zip Code

757-358-0505
_____
Telephone Number

(07/20)

# ORDER SETTING CONDITIONS OF RELEASE
# NORTHERN DISTRICT OF ALABAMA

It is ORDERED that the defendant's release in this case is subject to the following Standard Terms and Conditions of Release:

☒  (1)  You must not commit any federal, state, or local crime.

☒  (2)  You must maintain your current residence and advise your supervising officer before making any change in address or telephone number.

☒  (3)  You must appear at all proceedings as required and, if convicted, must surrender for service of any sentence the court may impose.

☒  (4)  You must report to your supervising officer as instructed, and you must answer truthfully all questions asked by that officer.  You also must allow your supervising officer to visit you at any time at your home or elsewhere, and you must permit your supervising officer to take any items prohibited by the terms of your release that he or she observes in plain view during a visit.

☒  (5)  You must not contact, intimidate, or threaten any witness, victim, juror, informant, criminal investigator, or officer of the court.

☒  (6)  If you are arrested, questioned, or stopped by a law enforcement officer, you must report this contact to your supervising officer as soon as possible.

☒  (7)  You must cooperate in the collection of a DNA sample if it is authorized by 42 U.S.C. § 14135a.

☒  (8)  You must not own, possess, or have access to any firearm, ammunition, dangerous weapon, or destructive device, and you consent for the United States Marshals Service or the United States Probation Office to search your person, car, or home at any time for weapons or ammunition.

☒  (9)  You must not use, possess, or be around any unlawful controlled substances or the paraphernalia associated with the use of controlled substances.  You may possess and use only prescription medication lawfully prescribed by a licensed medical practitioner.  If directed by your supervising officer, you must submit to testing or urinalysis to determine whether you have used or consumed any unlawful or unprescribed substances.  If deemed appropriate by your supervising officer, you must participate in drug abuse or alcohol abuse treatment programs, including evaluation, therapy, and residential programs as directed by your supervising officer.

In addition to the Standard Terms and Conditions of Release, it is ORDERED that the defendant's release in this case is subject to the following Special Terms and Conditions of Release:

☐   (10)   You are released to the third-party custody of:

                Name of person(s): _____
                Address: _____
                City and State: _____
                Telephone Number: _____

who agrees (a) to supervise the defendant in accordance with all conditions of release, (b) to use every effort to assure your appearance at all court proceedings, and (c) to notify the court immediately in the event the defendant violates any conditions of release or disappears.

Signature of Third-Party Custodian: _____
                        Date: _____

☐   (11)   You must submit to an electronic location monitoring program with the appropriate technology and equipment to be determined by U.S. Probation Office, and you must comply with all program requirements as instructed by your supervising officer.
      ☐   You must pay all or part of the costs of the program if the probation office determines you have the financial ability to do so.
      ☐   You must pay $\_\_\_\_\_ per week of the cost of the program; or
      ☐   You are not required to pay the cost of the program.

☐   (12)   You must comply with the following restrictions:
      ☐   (a) **curfew,** which means that you must remain at your residence between the hours of _____ and _____, except that you may handle personal matters from _____ to _____. The curfew schedule may be modified at the discretion of the probation officer.
      ☐   (b) **home detention,** which means that you must remain at your residence at all times, except for activities pre-approved by your supervising officer, including the following: employment, religious, educational and legal .
      ☐   (c) **home incarceration,** which means that you must remain at your residence at all times except for activities pre-approved by the Court.

☒   (13)   You must abide by the following travel restrictions: <u>your travel is restricted to the Northern District of Alabama and Middle District of Florida, unless prior approval is given by the United States Probation Officer.   Any travel outside the continental United States shall be approved by the Court.</u>

☒   (14)   You must surrender your passport if you have one, and you must not obtain a new passport or any other international travel document.

☒  (15)  You must actively seek employment or maintain employment, unless excused by your supervising officer for school, medical or other reasons.

☐  (16)  You must maintain or commence an educational program.

☒  (17)  You must avoid all contact with the following persons, whether known or unknown to you at this time: co-defendants Hon Ning "Matthew" Ho, Cham "Tony" Li, Jing "Harry" Chen, Anthony "David" Chang and Gwing Lee "Henry" Chien.

☐  (18)  You must refrain from the ☐ use or ☐excessive use of alcohol and submit to testing to determine whether you have used alcohol.

☐  (19)  You must submit to medical or psychiatric treatment and/or counseling as follows: you must participate in mental health treatment/counseling as directed by the United States Probation Office.

☐  (20)  You must not have unsupervised contact with anyone under 18 years of age.

☐  (21)  You must not use a computer or any other electronic device capable of accessing the internet, and you consent for the United States Marshals Service or the United States Probation Office to search your person, car, or home at any time for electronic devices, to seize any device found, and to provide the device to any appropriate law enforcement agency.

☐  (22)  You may not obtain any new lines of credit, including loans, credit cards, etc., without the permission of your supervising officer.

☐  (23)  You must comply with the following additional conditions:

### NOTICE TO THE DEFENDANT

**If you violate any of your conditions of release, the court may immediately issue a warrant for your arrest, revoke your release, and order you to be detained pending trial, as provided in 18 U.S.C. § 3148, and you could be prosecuted for contempt as provided in 18 U.S.C. § 401, which could result in a term of imprisonment or a fine.**

If you commit any new offense while on pretrial release, upon conviction this new offense may result in an additional sentence to a term of imprisonment of not less than two years nor more than ten years if the offense is a felony, or a term of imprisonment of not less than ninety days nor more than one year if the offense is a misdemeanor.   This sentence shall be consecutive to any other sentence and must be imposed in addition to the sentence received for the offense itself.

18 U.S.C. § 1503 makes it a criminal offense punishable by up to five years in jail and a $250,000 fine to intimidate or attempt to intimidate a witness, juror, or officer of the court; 18 U.S.C. § 1510 makes

it a criminal offense punishable by up to five years in jail and a $250,000 fine to obstruct a criminal investigation; 18 U.S.C. § 1512 makes it a criminal offense punishable by up to ten years in prison a $250,000 fine to tamper with a witness, victim or informant; and 18 U.S.C. § 1513 makes it a criminal offense punishable by up to ten years in jail and a $250,000 fine to retaliate against a witness, victim, or informant, or threaten or attempt to do so.

It is a criminal offense under 18 U.S.C. § 3146 if you knowingly fail to appear as required by the conditions of release, or you fail to surrender to serve any sentence pursuant to a court order. If you were released in connection with a charge of, or while awaiting sentence, surrender for the service of a sentence, or appeal or certiorari after conviction, for:

(1)     an offense punishable by death, life imprisonment, or imprisonment for a term of fifteen years or more, you shall be fined not more than $250,000 or imprisoned for not more than ten years, or both;

(2)     an offense punishable by imprisonment for a term of five years or more, but less than fifteen years, you shall be fined not more than $250,000 or imprisoned for not more than five years, or both;

(3)     any other felony, you shall be fined not more than $250,000 or imprisoned not more than two years, or both;

(4)     a misdemeanor, you shall be fined not more than $100,000 or imprisonment not more than one year, or both.

A term of imprisonment imposed for failure to appear or surrender shall be consecutive to the sentence of imprisonment for any other offense. In addition, a failure to appear or surrender my result in the forfeiture of any bail posted.

## ACKNOWLEDGMENT OF THE DEFENDANT

I acknowledge that I am the defendant in this case and that I am aware of and understand the conditions of release. I promise to obey the conditions of release, to appear as directed, and to surrender to serve any sentence imposed. I am aware of the penalties and sanctions set forth above. I understand that by signing this document I am consenting to the search(es) described above.

_____
Defendant's Signature

Signed and acknowledged before me this 19th day of November, 2025.

_____
Herman N. Johnson, Jr.
United States Magistrate Judge

FILED
2025 Nov-23 AM 09:17
U.S. DISTRICT COURT
N.D. OF ALABAMA

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
<u>NORTHEASTERN DIVISION</u>**

| | |
|---|---|
| **UNITED STATES OF AMERICA** | |
| **v.** | **Case No. 5:25-mj-01215-HNJ** |
| **BRIAN CURTIS RAYMOND,** | |
| **Defendant.** | |

## <u>MOTION TO MODIFY BOND</u>

In accordance with the Parties' agreement at the November 19, 2025 initial appearance, the United States moves the Court to modify the bond entered by the Court by replacing the $300,000 unsecured bond with a $400,000 secured bond.

Respectfully submitted,

PRIM F. ESCALONA
United States Attorney

*/s/ John M. Hundscheid*
John M. Hundscheid
Assistant United States Attorney

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on November 23, 2025, I filed a copy of the foregoing

with the Court through CM-ECF, which caused a copy to be served on counsel of

record.

<div style="margin-left:50%;">

*/s/ John M. Hundscheid*
_____

John M. Hundscheid
Assistant United States Attorney

</div>



This is an automatic e-mail message generated by the CM/ECF system. Please DO NOT RESPOND to this e-mail because the mail box is unattended.
***NOTE TO PUBLIC ACCESS USERS*** Judicial Conference of the United States policy permits attorneys of record and parties in a case (including pro se litigants) to receive one free electronic copy of all documents filed electronically, if receipt is required by law or directed by the filer. PACER access fees apply to all other users. To avoid later charges, download a copy of each document during this first viewing. However, if the referenced document is a transcript, the free copy and 30 page limit do not apply.

### U.S. District Court

### Northern District of Alabama

## Notice of Electronic Filing

The following transaction was entered on 11/24/2025 at 9:45 AM CST and filed on 11/24/2025
**Case Name:**     USA v. Raymond
**Case Number:**     5:25-mj-01215-HNJ
**Filer:**
**Document Number:** 5 (No document attached)

**Docket Text:**
**TEXT ORDER as to Brian Curtis Raymond re [4] MOTION to Modify Conditions of Release filed by USA: Motion Hearing set for 11/24/2025 at 2:30 PM in the U.S. Courthouse, 660 Gallatin Street SW, Courtroom III, Huntsville, AL before the undersigned. Signed by Magistrate Judge Herman N Johnson, Jr on 11/24/25. (SHB)**

**5:25-mj-01215-HNJ-1 Notice has been electronically mailed to:**

Prim F. Escalona, US Attorney     Caseview.ecf@usdoj.gov

US Probation     alnpdb_cmecf@alnp.uscourts.gov

USM     usms-aln-courts@usdoj.gov

John Mark Hundscheid     john.hundscheid@usdoj.gov

Michael Ryan Pillsbury	mpillsbury@maynardnexsen.com

**5:25-mj-01215-HNJ-1 Notice has been delivered by other means to:**

AO 98 (Rev. 12/11) Appearance Bond

# UNITED STATES DISTRICT COURT

for the

<u>Northern</u> District of <u>Alabama</u>

**FILED**

**NOV 2 4 2025**

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA

United States of America

v.

<u>Brian Curtis Raymond</u>
*Defendant*

)
)
)
)
)

Case No.    5:25-mj-1215-HNJ

## APPEARANCE BOND

### Defendant's Agreement

I, _____ Brian Curtis Raymond _____ *(defendant)*, agree to follow every order of this court, or any court that considers this case, and I further agree that this bond may be forfeited if I fail:

( ☒ ) to appear for court proceedings;
( ☒ ) if convicted, to surrender to serve a sentence that the court may impose; or
( ☒ ) to comply with all conditions set forth in the Order Setting Conditions of Release.

### Type of Bond

( ☐ ) (1)  This is a personal recognizance bond.

( ☐ ) (2)  This is an unsecured bond of $ _____ .

( ☒ ) (3)  This is a secured bond of $    400,000.00 _____ , secured by:

( ☐ )  (a) $ _____ , in cash deposited with the court.

( ☒ )  (b) the agreement of the defendant and each surety (if applicable), to forfeit the following cash or other property
*(describe the cash or other property, including claims on it — such as a lien, mortgage, or loan — and attach proof of ownership and value)*:
10 Old Stonebank Ln NW, Huntsville, Alabama 35806
_____ .

If this bond is secured by real property, documents to protect the secured interest may be filed of record.

( ☐ )  (c) a bail bond with a solvent surety *(attach a copy of the bail bond, or describe it and identify the surety)*:
_____
_____
_____ .

### Forfeiture or Release of the Bond

*Forfeiture of the Bond.*  This appearance bond may be forfeited if the defendant does not comply with the above agreement. The court may immediately order the amount of the bond surrendered to the United States, including the security for the bond, if the defendant does not comply with the agreement. At the request of the United States, the court may order a judgment of forfeiture against the defendant and each surety for the entire amount of the bond, including interest and costs.

AO 98 (Rev. 12/11) Appearance Bond

*Release of the Bond.* The court may order this appearance bond ended at any time. This bond will be satisfied and the security will be released when either: (1) the defendant is found not guilty on all charges, or (2) the defendant reports to serve a sentence.

### Declarations

*Ownership of the Property.* I, the defendant – and each surety – declare under penalty of perjury that:

(1)     all owners of the property securing this appearance bond are included on the bond;

(2)     the property is not subject to claims, except as described above; and

(3)     I will not sell the property, allow further claims to be made against it, or do anything to reduce its value while this appearance bond is in effect.

*Acceptance.* I, the defendant – and each surety – have read this appearance bond and have either read all the conditions of release set by the court or had them explained to me. I agree to this Appearance Bond.

I, the defendant – and each surety – declare under penalty of perjury that this information is true. (See 28 U.S.C.§ 1746.)

Date:    11/24/2025

_____
*Defendant's signature*

Brian Raymond
_____
*Surety/property owner – printed name*

_____  11/24/2025
*Surety/property owner – signature and date*

_____
*Surety/property owner – printed name*

_____
*Surety/property owner – signature and date*

_____
*Surety/property owner – printed name*

_____
*Surety/property owner – signature and date*

*CLERK OF COURT*

Date:    11/24/2025

_____
*Signature of Clerk or Deputy Clerk*

Approved.

Date:    11/24/2025

_____
*Judge's signature*

(07/20)

# ORDER SETTING CONDITIONS OF RELEASE
# NORTHERN DISTRICT OF ALABAMA

It is ORDERED that the defendant's release in this case is subject to the following Standard Terms and Conditions of Release:

☒     (1)     You must not commit any federal, state, or local crime.

☒     (2)     You must maintain your current residence and advise your supervising officer before making any change in address or telephone number.

☒     (3)     You must appear at all proceedings as required and, if convicted, must surrender for service of any sentence the court may impose.

☒     (4)     You must report to your supervising officer as instructed, and you must answer truthfully all questions asked by that officer.  You also must allow your supervising officer to visit you at any time at your home or elsewhere, and you must permit your supervising officer to take any items prohibited by the terms of your release that he or she observes in plain view during a visit.

☒     (5)     You must not contact, intimidate, or threaten any witness, victim, juror, informant, criminal investigator, or officer of the court.

☒     (6)     If you are arrested, questioned, or stopped by a law enforcement officer, you must report this contact to your supervising officer as soon as possible.

☒     (7)     You must cooperate in the collection of a DNA sample if it is authorized by 42 U.S.C. § 14135a.

☒     (8)     You must not own, possess, or have access to any firearm, ammunition, dangerous weapon, or destructive device, and you consent for the United States Marshals Service or the United States Probation Office to search your person, car, or home at any time for weapons or ammunition.

☒     (9)     You must not use, possess, or be around any unlawful controlled substances or the paraphernalia associated with the use of controlled substances.  You may possess and use only prescription medication lawfully prescribed by a licensed medical practitioner.  If directed by your supervising officer, you must submit to testing or urinalysis to determine whether you have used or consumed any unlawful or unprescribed substances.  If deemed appropriate by your supervising officer, you must participate in drug abuse or alcohol abuse treatment programs, including evaluation, therapy, and residential programs as directed by your supervising officer.

In addition to the Standard Terms and Conditions of Release, it is ORDERED that the defendant's release in this case is subject to the following Special Terms and Conditions of Release:

☐　(10)　You are released to the third-party custody of:

Name of person(s):　＿＿＿＿＿＿＿＿＿＿＿＿＿＿＿＿＿＿＿
Address:　＿＿＿＿＿＿＿＿＿＿＿＿＿＿＿＿＿＿＿
City and State:　＿＿＿＿＿＿＿＿＿＿＿＿＿＿＿＿＿＿＿
Telephone Number:　＿＿＿＿＿＿＿＿＿＿＿＿＿＿＿＿＿

who agrees (a) to supervise the defendant in accordance with all conditions of release, (b) to use every effort to assure your appearance at all court proceedings, and (c) to notify the court immediately in the event the defendant violates any conditions of release or disappears.

Signature of Third-Party Custodian:　＿＿＿＿＿＿＿＿＿＿＿＿＿＿＿
Date:　＿＿＿＿＿＿＿＿＿＿

☐　(11)　You must submit to an electronic location monitoring program with the appropriate technology and equipment to be determined by U.S. Probation Office, and you must comply with all program requirements as instructed by your supervising officer.
　　　☐　You must pay all or part of the costs of the program if the probation office determines you have the financial ability to do so.
　　　☐　You must pay $＿＿＿ per week of the cost of the program; or
　　　☐　You are not required to pay the cost of the program.

☐　(12)　You must comply with the following restrictions:
　　　☐　(a) **curfew,** which means that you must remain at your residence between the hours of ＿＿＿＿ and ＿＿＿＿＿, except that you may handle personal matters from ＿＿＿＿＿ to ＿＿＿＿＿. The curfew schedule may be modified at the discretion of the probation officer.
　　　☐　(b) **home detention,** which means that you must remain at your residence at all times, except for activities pre-approved by your supervising officer, including the following: employment, religious, educational and legal .
　　　☐　(c) **home incarceration,** which means that you must remain at your residence at all times except for activities pre-approved by the Court.

☒　(13)　You must abide by the following travel restrictions: your travel is restricted to the Northern District of Alabama and Middle District of Florida, unless prior approval is given by the United States Probation Officer. Any travel outside the continental United States shall be approved by the Court.

☒　(14)　You must surrender your passport if you have one, and you must not obtain a new passport or any other international travel document.

☒ (15) You must actively seek employment or maintain employment, unless excused by your supervising officer for school, medical or other reasons.

☐ (16) You must maintain or commence an educational program.

☒ (17) You must avoid all contact with the following persons, whether known or unknown to you at this time: co-defendants Hon Ning "Matthew" Ho, Cham "Tony" Li, Jing "Harry" Chen, Anthony "David" Chang and Gwing Lee "Henry" Chien.

☐ (18) You must refrain from the ☐ use or ☐excessive use of alcohol and submit to testing to determine whether you have used alcohol.

☐ (19) You must submit to medical or psychiatric treatment and/or counseling as follows: you must participate in mental health treatment/counseling as directed by the United States Probation Office.

☐ (20) You must not have unsupervised contact with anyone under 18 years of age.

☐ (21) You must not use a computer or any other electronic device capable of accessing the internet, and you consent for the United States Marshals Service or the United States Probation Office to search your person, car, or home at any time for electronic devices, to seize any device found, and to provide the device to any appropriate law enforcement agency.

☐ (22) You may not obtain any new lines of credit, including loans, credit cards, etc., without the permission of your supervising officer.

☒ (23) You must comply with the following additional conditions: you shall appear for arraignment at 3:00 p.m., on Thursday, December 4, 2025, in Courtroom 12A of the Sam M. Gibbons U.S. Courthouse, 801 North Florida Avenue, Tampa, Florida, before United States Magistrate Judge Lindsay S. Griffin

### NOTICE TO THE DEFENDANT

**If you violate any of your conditions of release, the court may immediately issue a warrant for your arrest, revoke your release, and order you to be detained pending trial, as provided in 18 U.S.C. § 3148, and you could be prosecuted for contempt as provided in 18 U.S.C. § 401, which could result in a term of imprisonment or a fine.**

If you commit any new offense while on pretrial release, upon conviction this new offense may result in an additional sentence to a term of imprisonment of not less than two years nor more than ten years if the offense is a felony, or a term of imprisonment of not less than ninety days nor more than one year if the offense is a misdemeanor.   This sentence shall be consecutive to any other sentence and must be imposed in addition to the sentence received for the offense itself.

3

18 U.S.C. § 1503 makes it a criminal offense punishable by up to five years in jail and a $250,000 fine to intimidate or attempt to intimidate a witness, juror, or officer of the court; 18 U.S.C. § 1510 makes it a criminal offense punishable by up to five years in jail and a $250,000 fine to obstruct a criminal investigation; 18 U.S.C. § 1512 makes it a criminal offense punishable by up to ten years in prison a $250,000 fine to tamper with a witness, victim or informant; and 18 U.S.C. § 1513 makes it a criminal offense punishable by up to ten years in jail and a $250,000 fine to retaliate against a witness, victim, or informant, or threaten or attempt to do so.

It is a criminal offense under 18 U.S.C. § 3146 if you knowingly fail to appear as required by the conditions of release, or you fail to surrender to serve any sentence pursuant to a court order. If you were released in connection with a charge of, or while awaiting sentence, surrender for the service of a sentence, or appeal or certiorari after conviction, for:

(1)     an offense punishable by death, life imprisonment, or imprisonment for a term of fifteen years or more, you shall be fined not more than $250,000 or imprisoned for not more than ten years, or both;

(2)     an offense punishable by imprisonment for a term of five years or more, but less than fifteen years, you shall be fined not more than $250,000 or imprisoned for not more than five years, or both;

(3)     any other felony, you shall be fined not more than $250,000 or imprisoned not more than two years, or both;

(4)     a misdemeanor, you shall be fined not more than $100,000 or imprisonment not more than one year, or both.

A term of imprisonment imposed for failure to appear or surrender shall be consecutive to the sentence of imprisonment for any other offense. In addition, a failure to appear or surrender my result in the forfeiture of any bail posted.

## ACKNOWLEDGMENT OF THE DEFENDANT

I acknowledge that I am the defendant in this case and that I am aware of and understand the conditions of release. I promise to obey the conditions of release, to appear as directed, and to surrender to serve any sentence imposed. I am aware of the penalties and sanctions set forth above. I understand that by signing this document I am consenting to the search(es) described above.

_____
Defendant's Signature

Signed and acknowledged before me this 24th day of November, 2025.

_____
Herman N. Johnson, Jr.
United States Magistrate Judge

4

# JUSTIFICATION OF SURETY

I, **BRIAN CURTIS RAYMOND**, the undersigned surety, say that I reside at:

10 Old Stonebank Ln NW, Huntsville, Alabama, 35806, and that my net worth is

$400,000.00.

I further state that I am also owner of the property located at:

**10 Old Stonebank Ln NW
Huntsville, Alabama 35806**

and more particularly described in the attached warranty deed, and that I will

not sell, convey, transfer or further encumber the above-described property while

my surety bond remains in effect.

Date: November 24, 2025

Surety –Brian Curtis Raymond

Subscribed and sworn to before me this 24th day of November, 2025.

Herman N. Johnson, Jr.
United States Magistrate Judge

## PROMISSORY NOTE

Huntsville, Alabama

Amount:  $400,000.00

Date:   November 24, 2025

FOR VALUE RECEIVED, the undersigned promises to pay to the United States Government at Huntsville, Alabama, the sum of **FOUR HUNDRED THOUSAND DOLLARS ($400,000.00)**.  This note shall be due and payable in full upon any default under the surety bond executed by me this date.

Presentment, protest, and notice of dishonor are hereby waived.

Surety – Brian Curtis Raymond

2025 Nov-26  PM 04:51
U.S. DISTRICT COURT
N.D. OF ALABAMA

Madison County Tax Assessment
Cliff Mann, Tax Assessor
1918 North Memorial Parkway
Huntsville, AL 35801
256-532-3350
taxassess@madisoncountyal.gov



# Assessment Detail Report

## Account Information

RAYMOND BRIAN CURTIS

10 OLD STONEBANK LN NW
HUNTSVILLE, AL  35806

Account Number: 583602
Tax Year: 2026
In Care Of:
Parcel Status:   Assessing/Regular

## Parcel Information

| | | | |
|---|---|---|---|
| PPIN: | 542331 | Owners: | RAYMOND BRIAN CURTIS |
| Parcel Number: | 1507261000002035 | | |
| Entry: | 0 | | |
| Type: | R | Physical Address: | 10 OLD STONEBANK LN NW |

Legal Desc: LOT 30 THE VILLAGE OF PROVIDENCE PH VIII
PB # 2014-392650 & AFFD #2016-381630 & AFFD #2020-61508

## Appraisal Details

Exemptions:          Bill Num:          Abstract: G  District: 02   Book: 2021          Page: 2351

| Type | # | Code | Description | Tax Class | Acres | Appraised | Current Use | Hmstd Eligible | Assessed |
|---|---|---|---|---|---|---|---|---|---|
| Building | 1 | 111 | SINGLE FAMILY RESIDENCE | 2 | | $741,600.00 | | | $148,320.00 |
| Land | 1 | 1110 | ONE FAMILY | 2 | | $165,000.00 | | | $33,000.00 |

## Tax Details

| | Gross | Exempt | Net Due | | Value |
|---|---|---|---|---|---|
| State | $1,178.58 | $0.00 | $1,178.58 | Appraised | 906,600 |
| County | $1,994.52 | $0.00 | $1,994.52 | Taxable | 906,600 |
| City | $2,357.16 | $0.00 | $2,357.16 | Assessed | 181,320 |
| School | $4,986.30 | $0.00 | $4,986.30 | Penalty | 0 |
| Hospital | $0.00 | $0.00 | $0.00 | | |
| Other | $0.00 | $0.00 | $0.00 | | |
| | | | | | |
| Timber Tax | $0.00 | | $0.00 | | |
| Other Fees | $0.00 | | $0.00 | | |
| Estimated Tax | $10,516.56 | $0.00 | $10,516.56 | | |

Taxes are subject to change.

**SPS** SELECT Portfolio SERVICING, inc.

P.O. Box 65250
Salt Lake City, UT 84165-0250
www.spservicing.com

Sign up for paperless delivery
at www.spservicing.com

**Mortgage Statement**
Statement Date:11/14/2025
Page 1 of 2

2025 Nov-26  PM 04:51
U.S. DISTRICT COURT
N.D. OF ALABAMA

Customer Service - (800) 256-8602
Monday - Friday    8:00AM - 8:00PM ET
Saturday           8:00AM - 3:00PM ET

*For other important information, see reverse side*

BRIAN CURTIS RAYMOND
10 OLD STONEBANK LN NW
HUNTSVILLE, AL 35806

| Account Number | XXXX8966 |
| Property Address | TONEBANK LN NW |
| | HUNTSVILLE AL 35806 |

| Loan Due Date | 12/01/2025 |
| Payment Due Date | 12/01/2025 |
| Amount Due | $7,288.30 |

*If payment is received after 12/16/2025, $100.00 late fee will be charged.*

### Account Information

| | |
|---|---|
| Interest Bearing Principal | $1,036,049.70 |
| Deferred Principal | $0.00 |
| Outstanding Principal ¹ | $1,036,049.70 |
| Unpaid Late Charges | $100.00 |
| Other Charges and Fees | $25.00 |
| Interest Rate (Fixed) | 5.125% |
| Prepayment Penalty | No |

### Explanation of Amount Due

| | |
|---|---|
| Principal | $1,591.78 |
| Interest | $4,424.80 |
| Escrow (Taxes and Insurance) | $1,271.72 |
| **Regular Monthly Payment** | **$7,288.30** |
| Charges / Fees this Period | $0.00 |
| Past Due Payment(s) | $0.00 |
| Unapplied Payment(s) | $0.00 |
| **Total Amount Due** | **$7,288.30** |

### Transaction Activity (10/16/2025 to 11/14/2025)

| Date Description | Principal Balance | Interest | Taxes & Insurance | Late Charges | Other Fees | Total ¹ |
|---|---|---|---|---|---|---|
| 10/16 BEG BALANCE | $1,037,634.72 | $4,431.56 | ($13,788.41) | $100.00 | $25.00 | $1,028,402.87 |
| 11/05 PAYMENT | (1,585.02) | (4,431.58) | (1,271.72) | 0.00 | 0.00 | (7,288.30) |
| 11/07 COUNTY TAX | 0.00 | 0.00 | 10,516.56 | | | 10,516.56 |
| 11/14 ENDING BALANCE | $1,036,049.70 | $0.00 | ($4,543.57) | $100.00 | $25.00 | $1,031,631.13 |

### Past Payments Breakdown

| | Paid Last Month | Paid Year To Date |
|---|---|---|
| Principal | $1,585.02 | $17,069.13 |
| Interest | $4,431.56 | $49,113.25 |
| Escrow (Taxes and Insurance) | $1,271.72 | $15,086.78 |
| Fees and Other Charges | $0.00 | $0.00 |
| Partial Payment (Unapplied) | $0.00 | |
| **Total** | **$7,288.30** | **$81,269.16** |
| Total Unapplied Balance | | $0.00 |

### Important Messages

All communication sent to you by SPS is always available on our website: www.spservicing.com.  For faster access to written communication and documents, please log in to your customer account on our website to view.

¹ This amount is not a payoff quote. If you would like a payoff quote, please see instructions on reverse side.

Any transactions that occurred after the statement date noted above will be reflected on your next statement.

This is an attempt to collect a debt. All information obtained will be used for that purpose.

Your payment will be made according to your ACH agreement. If you receive a notice from us indicating your monthly payment amount will change, your ACH payment will change to match the amount provided in the notice. This change will be made as of the first scheduled automatic payment after the date the payment change is effective.

Under the Servicemembers Civil Relief Act if you or a family member has been deployed to active duty, you may be eligible for certain protections regarding your mortgage loan. Please contact us at (800) 258-8602 to discuss these protections.

YTD Interest Paid amount will include capitalized interest in the event your loan was modified in the current year.

*Please detach bottom portion and return with your payment. Allow 7 - 10 days for postal delivery. Please do not send cash.*
### MONTHLY PAYMENT COUPON

| Amount Due | |
|---|---|
| Borrower Name(s) | BRIAN CURTIS RAYMOND |
| Account Number | XXXX8966 |

Due By 12/01/2025: $7,288.30
$100.00 late fee will be charged after 12/16/2025

Make checks payable to: Select Portfolio Servicing

| | |
|---|---|
| Monthly Payment | $ . |
| Additional Principal | $ . |
| Additional Escrow | $ . |
| Late Fees | $ . |
| Other (Please Specify) | $ . |
| **Total Amount Enclosed** | $ |

SELECT PORTFOLIO SERVICING, INC.
PO BOX 65450
SALT LAKE CITY UT  84165-0450

☐ Change of address or telephone? If so, check here and note changes on back

2771  0030908966  0000728830  0000738830  6

## IMPORTANT INFORMATION

**Important Mailing Addresses (Please include your account number on all correspondence)**

| Regular Payments | Overnight/Express Payments | Notice of Error or Information Request or Qualified Written Request | General Correspondence | Check by Phone | Bankruptcy Correspondence & Notices must be sent to: |
|---|---|---|---|---|---|
| Select Portfolio Servicing, Inc. Attn: Remittance Processing P.O. Box 65450 Salt Lake City, UT 84165 | Select Portfolio Servicing, Inc. Attn: Cashiering Dept. 3217 S. Decker Lake Dr. Salt Lake City, UT 84119 | Select Portfolio Servicing, Inc. P.O. Box 65277 Salt Lake City, UT 84165 Fax (801) 270-7859 | Select Portfolio Servicing, Inc. P.O. Box 65250 Salt Lake City, UT 84165 | (800) 258-8602 Option 1 | Select Portfolio Servicing, Inc. Attn: Bankruptcy Dept. P.O. Box 65250 Salt Lake City, UT 84165 |

**PAYMENT INSTRUCTIONS** Paying your mortgage on time is an important obligation, so please pay on or before the payment due date. Payments are not considered paid until received and posted to your account. Please include the late charge in any payment made after the late payment due date noted on your statement. Postal delays do not result in a waiver of late charges, so please allow adequate time for mail service. If you don't pay on or before 3 p.m. MT on the payment due date, your loan will be considered delinquent. (NOTE: If you are currently sending all or part of your payment to the bankruptcy trustee, please disregard the Select Portfolio Servicing, Inc. payment address for that portion you are sending to the trustee.) We do not accept payments in cash.

**APPLICATION OF PAYMENTS** If you are current in making your payments, we will apply payments according to your Note. If you are delinquent, we apply payments to the oldest outstanding payments that are due under your Note.

**LOAN REPRESENTATIVES** If you would like to speak to someone about making a payment or payment arrangements, please call one of our loan representatives at (800) 258-8602 (Monday - Friday, 8 a.m. - 9 p.m. ET; Saturday, 8 a.m. - 3 p.m. ET).

**AUTOMATED CONVERSION OF YOUR CHECKS TO ACH DEBIT ENTRIES AND RETURNED CHECKS OR DEBITS** When you provide us a check, you authorize us to use the information from your check to make a one time Electronic Funds Transfer from your bank account. When we use your check to make an Electronic Funds Transfer, funds may be withdrawn from your account quickly, as soon as the day we receive your check. You will not receive your check back from your financial institution. If there are insufficient funds in your account we will reverse the amount of any such returned payment that we had credited to your mortgage. You authorize us to charge you a fee of up to twenty-five dollars ($25.00) as allowable by state law.

**CREDIT REPORTING** SPS furnishes information to consumer reporting agencies. You are hereby notified that a negative credit report reflecting on your credit record may be submitted to a credit reporting agency if you fail to fulfill the terms of your Note and Mortgage. If you believe such information is inaccurate, you may call Customer Service at (800) 258-8602, submit a written Notice of Error to the P.O. Box listed above, or submit a dispute with the consumer reporting agency.

**NOTICE OF ERROR OR INFORMATION REQUEST OR QUALIFIED WRITTEN REQUEST** If you believe there has been an error with the account or you require additional information, you may send a written Notice of Error or Information Request. All Notices of Error or Information Requests must be sent to the address listed above in the Important mailing addresses section, as this is our exclusive address under Federal Law for these matters. If you send your correspondence to any other address, it may not be processed in accordance with Federal Law.

**HOUSING COUNSELOR INFORMATION** If you would like counseling or assistance, you can contact the following: U.S. Department of Housing and Urban Development (HUD): For a list of homeownership counselors or counseling organizations in your area, go to http://www.hud.gov/offices/hsg/sfh/hcc/hcs.cfm or call 800-569-4287.

**SPECIAL REQUEST AND ADDITIONAL FEES**

| Payment by Phone with a Live Agent | Up to $15.00 |
|---|---|
| Payment via Website, Mobile App, or Automated Phone System | Up to $5.00 |
| Returned Check Fee | Up to $25.00 |
| Express Mail Fee | Actual Charge Incurred |

*This fee schedule does not contain all fees that may be charged for services rendered. The actual fee charged to a particular customer may be different based upon certain requirements under state law, agency guidelines (e.g., FHA, VA) or other relevant criteria.*

**LOAN PAYOFFS** Payoff information may be requested verbally by calling the Customer Service toll free number printed on this statement, by faxing your requests to (801) 269-4260 or by mailing your request to: P.O. Box 65250, Salt Lake City, UT 84165-0250. If you do not receive your payoff quote within 5 business days of placing your request, please call our Customer Service Department.

**HOME OWNER INSURANCE** You are required to maintain Homeowners Insurance (and if required, Flood Insurance), at all times during the term of your Mortgage and provide or ask your insurance agent each year to provide us copies of all renewal policies and invoices to the address shown below at least (30) days before the date your existing policy expires. It is important for you to remember that if we do not receive a copy of your renewal or replacement policy, SPS may obtain coverage to protect its interest in the property. The coverage provided for this insurance may be different and more expensive than your expired coverage. We will only do this after we have notified you of your failure to maintain coverage. It is possible we may obtain certain benefits from this insurance placement coverage.

To ensure that SPS is properly notified of any changes with your insurance policy, we need the information below to be added to the Standard Mortgage Clause on your insurance policy.

Select Portfolio Servicing, Inc.
ITS SUCCESSORS AND OR ASSIGNS
P.O. Box 7277 Springfield, OH 45501-7277

All insurance information (including your account number) should be mailed or faxed to:
Insurance Service Center: PO Box 7277, Springfield, OH 45501 Fax (866) 801-8177.

**REAL ESTATE TAX** If you have established an escrow account with us for taxes, you should keep copies of any tax bills you receive for your personal records. We have engaged a Tax Service to receive your tax bills, and we will pay taxes out of your escrow account to the extent there are sufficient balances in your escrow account. If you receive any special assessment bills, you should send them to our Tax Service Center address shown below. Special bills include:

- An area defined as a "Homeowner Area" where your local tax office will not send us the tax bill
- Any special assessments on your property in addition to your regular Real-Estate tax bills
- Any adjustments to your tax bills

Tax Service Center: PO Box 3541, Covina, CA 91722

**SPS CONSUMER OMBUDSMAN SERVICES** If you have an unresolved issue with SPS, and you have exhausted other customer service options, please contact our Consumer Ombudsman Department at (866) 662-0035 or through other methods found at www.spsservicing.com.

| COMMON ABBREVIATIONS | |
|---|---|
| INT | Interest |
| FC or F/C | Foreclosure |
| BK | Bankruptcy |
| BPO | Broker Price Opinion |
| MISC DISB | Disbursement from escrow account for other than escrow item (E.g.:Analysis Refund, Payoff Refund) |

*This common abbreviations table does not contain all abbreviations that may appear in the "Activity this Period" section. For more information please refer to the Fee Schedule and Description document located at www.spsservicing.com.*

---

HAS YOUR ADDRESS CHANGED? IF SO, PLEASE COMPLETE THIS FORM

Mailing Address _____

City _____ State _____ Zip _____

Home Phone _____ Business Phone _____
All Borrower's Signature Required For Address Change

_____ _____
Borrower's Signature                          Co-Borrower's Signature

2025 Nov-26 PM 04:52
U.S. DISTRICT COURT
N.D. OF ALABAMA

Deed Book 2021 Pg 2351
2351 of 2352
Madison County, Alabama
Frank Barger, PROBATE JUDGE
Recorded: 11/18/2021 1:16:35 PM
TRAN 523771 REC $373.25 Deed $373.25

Property Address:                          Grantee's Address:
**10 OLD STONEBANK LN. NW**               **10 OLD STONEBANK LN. NW**
**HUNTSVILLE, AL 35806**                  **HUNTSVILLE, AL 35806**

## WARRANTY DEED

State of Alabama
County of Madison

    **KNOW ALL MEN BY THESE PRESENTS**, that for and in consideration of the sum of TEN DOLLARS ($10.00), and other good and valuable consideration in hand paid to **SAM BRYAN and EMRY BRYAN, husband and wife** (hereinafter referred to as "Grantor(s)"), the receipt and sufficiency of which is hereby acknowledged, by the **BRIAN CURTIS RAYMOND, a single man** (hereinafter referred to as "Grantee(s)"), does hereby **GRANT, BARGAIN, SELL and CONVEY** unto Grantee(s), in fee simple absolute together with every contingent remainder and right of reversion, and subject to all the provisions contained in this warranty deed, the following described real property situated in Madison County, Alabama, to-wit:

**LOT 30, ACCORDING TO THE MAP OR PLAT OF VILLAGE OF PROVIDENCE, PHASE VIII, AS RECORDED IN PLAT DOCUMENT NO. 20140725000392650, IN THE OFFICE OF THE JUDGE OF PROBATE OF MADISON COUNTY, ALABAMA.**

**SUBJECT TO THOSE CERTAIN RESTRICTIONS AS RECORDED IN BOOK 1043, PAGE 936, AMENDED IN BOOK 1058, PAGE 143, AMENDED IN DOCUMENT NUMBERS 20040729000261640, 20050617000392820, 20060720000482240, 20060906000605990, 20061213000845400, 20050805000519830, 20131223000803310, 20140729000400620, 20141103000584290, 20150519000262750, 2017-00615365, 2018-00058395, 2019-00025875, AND AMENDED IN DOCUMENT NO. 2020-00070192, EASEMENT RESTRICTION RECORDED IN DOCUMENT NO. 20131223000803290, AND RESTRICTION IN COMMON AREA RECORDED IN DOCUMENT NO. 20140729000398890, IN THE OFFICE OF THE JUDGE OF PROBATE OF MADISON COUNTY, ALABAMA.**

**LESS AND EXCEPT** such oil, gas, and other mineral interests, and all rights and privileges in connection therewith, as may have been reserved or conveyed by prior owners, if any.

**THIS CONVEYANCE AND THE WARRANTIES CONTAINED IN THIS WARRANTY DEED ARE MADE SUBJECT TO THE FOLLOWING:**

Any and all covenants, restrictions, regulations, conditions, easements, rights-of-way, liens, set back lines, and other rights of whatever nature, recorded and/or unrecorded.

    **TOGETHER WITH ALL AND SINGULAR** the rights, members, privileges, tenements, hereditaments and appurtenances thereunto belonging, or in anywise appertaining.

    **TO HAVE AND TO HOLD** unto said Grantee(s), and the heirs and assigns of said Grantee(s), in fee simple, forever.

    **AND** except as to the above, and taxes hereafter falling due, which are assumed by said Grantee(s), for the Grantor(s), and for the heirs and assigns of the Grantor(s), hereby covenants and warrants to and with said Grantee(s), Grantee's heirs and assigns, that the Grantor(s) is seized of an indefeasible estate in fee simple in and to said real property, and has a good and lawful right to sell and convey the same, and that the Grantor(s) is in quiet and peaceable possession of said real property, and that said real property is free and clear of all liens and encumbrances, unless otherwise noted herein and/or incorporated herein by reference, and Grantor(s) does hereby WARRANT and will forever DEFEND the title to said real property, unto said Grantee(s), and Grantee's heirs and assigns, against the lawful claims and demands of all persons whomsoever.

IN WITNESS WHEREOF, the Grantor(s) has set the hand and seal of the Grantor(s) on this, the 29th day of October, 2021.

_____
SAM BRYAN

_____
EMRY BRYAN

STATE OF ALABAMA

COUNTY OF MADISON

I, the undersigned Notary Public in and for said County and State, hereby certify that SAM BRYAN and EMRY BRYAN whose name(s) is/are signed to the foregoing conveyance, and who is known to me, acknowledged before me on this day that, being informed of the contents of the conveyance, (s)he executed the same voluntarily on the day the same bears date.

Given under my hand and official seal this 29th day of October, 2021.

_____
Notary Public
My Commission Expires: 1/2/2024

Grantor's Name and mailing address:
SAM BRYAN and EMRY BRYAN
84 TOWNCENTER DR. NW
HUNTSVILLE, AL 35806

Grantee's Name and mailing address:
BRIAN CURTIS RAYMOND
10 OLD STONEBANK LN. NW
HUNTSVILLE, AL 35806

Property address: 10 OLD STONEBANK LN. NW, HUNTSVILLE, AL 35806

Date of Sale:  10/29/2021

Total Purchase Price: $1,450,000.00

The Purchase price or actual value claimed on this form can be verified in the following documentary evidence: (Check one) (Recordation of documentary evidence is not required)

_____ Bill of Sale
_____ Sales Contract
___x____ Closing Statement
_____ Appraisal
_____ Other

This Instrument Prepared by:

Larry Daniel
WOLFE, JONES, WOLFE, HANCOCK, DANIEL & SOUTH, LLC
905 Bob Wallace Avenue
Huntsville, AL 35801
(256) 534-2205

Deed Book 2021 Page 2352
Madison County, Alabama
File No.: DH-21-129                    Alabama Warranty Deed                    Page 2 of 2

Freddie Mac

| UCDP Submission Summary Report (SSR) | | | |
|---|---|---|---|
| Doc File ID | 1101D03E4E | Report Date/Time | 09/09/2021 08:29:13 |
| Document File Status (FRE) | Successful | Seller/Servicer Number | 209739 |
| Lender Name | Angel Oak Mortgage Solutions, LLC-Nationwide Property & Appraisal Services, LLC | Lender Loan Number | 802107166354 |

| Appraisal 1 | | | |
|---|---|---|---|
| Original Submitted Date/Time | 09/09/2021 08:28:42 | Document Status | Successful |
| Number of Resubmissions | 0 | Form Type | FNM 1004/FRE 70 |
| Last Submission Date/Time | 09/09/2021 08:28:42 | Appraised Value | $1300000 |
| Subject Address | 10 OLD STONEBANK LN NW, HUNTSVILLE, AL 35806 | Appraisal Effective Date | 2021-08-26 |
| | | Supervisory Appraiser | |
| Appraiser | MARK S. GORDON AL / R00543 | Borrower Name | BRIAN RAYMOND |
| Comps | Comp Address | | Adjusted Sale Price |
| Comp1 | 600 ADAMS ST, HUNTSVILLE, AL 35801 | | $1870954 |
| Comp2 | 104 McMULLEN LN, GURLEY, AL 35748 | | $1278437 |
| Comp3 | 9 HILLCREST AVE NW, HUNTSVILLE, AL 35806 | | $1312072 |
| Comp4 | 2602 MUIR WOODS DR, HAMPTON COVE, AL 35763 | | $1176288 |
| Comp5 | 51 RIDGE BLUFF CIR, HUNTSVILLE, AL 35803 | | $1441719 |

### UCDP Hard Stops

| Message ID | Form Section | Form Field Name | Property Affected | Full Message Description | Severity | Override Request Reason | Override Decision Reason | Override Decision Date/Time |
|---|---|---|---|---|---|---|---|---|
| No findings returned | | | | | | | | |

### Freddie Mac Proprietary Hard Stops

| Message ID | Form Section | Form Field Name | Property Affected | Full Message Description | Severity | Override Request Reason | Override Decision Reason | Override Decision Date/Time |
|---|---|---|---|---|---|---|---|---|
| FRE001 | N/A | N/A | N/A | Collateral R&W Relief Not Eligible | Warning | Automated override request | Override automatically approved | 09/09/2021 08:28:55 |
| FRE800 | N/A | N/A | N/A | Freddie Mac Findings (one or more warnings) | Warning | Automated override request | Override automatically approved | 09/09/2021 08:28:55 |

| UAD Compliance Findings | | | | | | | | |
|---|---|---|---|---|---|---|---|---|
| **No findings returned** | | | | | | | | |
| **Freddie Mac Proprietary Edit Findings** | | | | | | | | |
| FRE4005 | N/A | N/A | N/A | This appraisal is not eligible for collateral representation and warranty relief. | Warning | N/A | N/A | N/A |
| FRE4020 | N/A | N/A | N/A | LCA Risk is assessed at 3.5 indicating a Moderate risk of overvaluation. | Warning | N/A | N/A | N/A |
| FRE4150 | N/A | N/A | N/A | Modeled sale data indicates that there are no sales with a sale price higher than the reported opinion of value. Please review LCA and report sales to ensure that the appraiser has provided the most relevant and representative sales for the subject. | Warning | N/A | N/A | N/A |
| FRE4220 | Sales Comparison | Proximity to Subject | Multiple Sales Comps | Based on the subject property's reported location type (SUBURBAN), the following comparable sales/listings may be distant: Comp 1 (6.87 miles E), Comp 2 (12.97 miles E), Comp 4 (13.18 miles E) and Comp 5 (14.39 miles SE). Please review and confirm that the comparable property(ies) are appropriately selected. | Warning | N/A | N/A | N/A |
| FRE4231 | Sales Comparison | Sale Price/Gross Liv. Area | Subject | The price-per-square foot of the subject property ($346.39/sf) is higher than the average recent sales within the vicinity. Average = $175.28/sf; Standard Deviation = $46.39/sf. Please confirm the comparable sales provided in the appraisal are among the most appropriate available. | Warning | N/A | N/A | N/A |
| FRE4506 | Improvements | Finished Area Above Grade Contains Bedroom | Subject | The bedroom/bathroom count for the subject property (Bed: 4, Bath: 3.1) varies from the public record value of (Bed: 0, Bath: [null]). Please confirm that the bedroom/bathroom count is correct and supported within the appraisal. | Warning | N/A | N/A | N/A |
| FRE4523 | Sales Comparison | Proximity to Subject | Sales Comp 2 | The reported distance of the following comparable sales/listings varies from the geocoded property address (as determined by geographic coordinates): Comp 2 (report: 12.97 miles; geocoded distance: 16.74 miles). Please ensure that reported distances are accurate. | Warning | N/A | N/A | N/A |





| UCDP Submission Summary Report (SSR) | | | |
|---|---|---|---|
| Doc File ID | 1101D03E4E | Report Date/Time | 09/09/2021 08:29:13 |
| Document File Status (FRE) | Successful | Seller/Servicer Number | 209739 |
| Lender Name | Angel Oak Mortgage Solutions, LLC-Nationwide Property & Appraisal Services, LLC | Lender Loan Number | 802107166354 |

| Appraisal 1 | | | |
|---|---|---|---|
| Original Submitted Date/Time | 09/09/2021 08:28:42 | Document Status | Successful |
| Number of Resubmissions | 0 | Form Type | FNM 1004/FRE 70 |
| Last Submission Date/Time | 09/09/2021 08:28:42 | Appraised Value | $1300000 |
| Subject Address | 10 OLD STONEBANK LN NW, HUNTSVILLE, AL 35806 | Appraisal Effective Date | 2021-08-26 |
| | | Supervisory Appraiser | |
| Appraiser | MARK S. GORDON AL / R00543 | Borrower Name | BRIAN RAYMOND |
| Comps | Comp Address | | Adjusted Sale Price |
| Comp1 | 600 ADAMS ST, HUNTSVILLE, AL 35801 | | $1870954 |
| Comp2 | 104 McMULLEN LN, GURLEY, AL 35748 | | $1278437 |
| Comp3 | 9 HILLCREST AVE NW, HUNTSVILLE, AL 35806 | | $1312072 |
| Comp4 | 2602 MUIR WOODS DR, HAMPTON COVE, AL 35763 | | $1176288 |
| Comp5 | 51 RIDGE BLUFF CIR, HUNTSVILLE, AL 35803 | | $1441719 |

**UCDP Hard Stops**

| Message ID | Form Section | Form Field Name | Property Affected | Full Message Description | Severity | Override Request Reason | Override Decision Reason | Override Decision Date/Time |
|---|---|---|---|---|---|---|---|---|
| No findings returned | | | | | | | | |

**Freddie Mac Proprietary Hard Stops**

| Message ID | Form Section | Form Field Name | Property Affected | Full Message Description | Severity | Override Request Reason | Override Decision Reason | Override Decision Date/Time |
|---|---|---|---|---|---|---|---|---|
| FRE001 | N/A | N/A | N/A | Collateral R&W Relief Not Eligible | Warning | Automated override request | Override automatically approved | 09/09/2021 08:28:55 |
| FRE800 | N/A | N/A | N/A | Freddie Mac Findings (one or more warnings) | Warning | Automated override request | Override automatically approved | 09/09/2021 08:28:55 |

| UAD Compliance Findings | | | | | | | | |
|---|---|---|---|---|---|---|---|---|
| **No findings returned** | | | | | | | | |
| **Freddie Mac Proprietary Edit Findings** | | | | | | | | |
| FRE4005 | N/A | N/A | N/A | This appraisal is not eligible for collateral representation and warranty relief. | Warning | N/A | N/A | N/A |
| FRE4020 | N/A | N/A | N/A | LCA Risk is assessed at 3.5 indicating a Moderate risk of overvaluation. | Warning | N/A | N/A | N/A |
| FRE4150 | N/A | N/A | N/A | Modeled sale data indicates that there are no sales with a sale price higher than the reported opinion of value. Please review LCA and report sales to ensure that the appraiser has provided the most relevant and representative sales for the subject. | Warning | N/A | N/A | N/A |
| FRE4220 | Sales Comparison | Proximity to Subject | Multiple Sales Comps | Based on the subject property's reported location type (SUBURBAN), the following comparable sales/listings may be distant: Comp 1 (6.87 miles E), Comp 2 (12.97 miles E), Comp 4 (13.18 miles E) and Comp 5 (14.39 miles SE). Please review and confirm that the comparable property(ies) are appropriately selected. | Warning | N/A | N/A | N/A |
| FRE4231 | Sales Comparison | Sale Price/Gross Liv. Area | Subject | The price-per-square foot of the subject property ($346.39/sf) is higher than the average recent sales within the vicinity. Average = $175.28/sf; Standard Deviation = $46.39/sf. Please confirm the comparable sales provided in the appraisal are among the most appropriate available. | Warning | N/A | N/A | N/A |
| FRE4506 | Improvements | Finished Area Above Grade Contains Bedroom | Subject | The bedroom/bathroom count for the subject property (Bed: 4, Bath: 3.1) varies from the public record value of (Bed: 0, Bath: [null]). Please confirm that the bedroom/bathroom count is correct and supported within the appraisal. | Warning | N/A | N/A | N/A |
| FRE4523 | Sales Comparison | Proximity to Subject | Sales Comp 2 | The reported distance of the following comparable sales/listings varies from the geocoded property address (as determined by geographic coordinates): Comp 2 (report: 12.97 miles; geocoded distance: 16.74 miles). Please ensure that reported distances are accurate. | Warning | N/A | N/A | N/A |

# INVOICE

Nationwide Property & Appraisal Services
1103 Laurel Oak Rd Suite 160
Voorhees, NJ 08043
Phone: 856-258-6977
Fax: 856-385-7065
Email: **appraisals@onestopappraisals.com**



**NATIONWIDE**
PROPERTY & APPRAISAL SERVICES

| INVOICE NUMBER |
|---|
| 866725 |

| DATE |
|---|
| 09/09/2021 |

**To:**
Bank of England
5 Statehouse Plaza STE 500
Little Rock, AR 72201

Telephone Number: 212-335-0179
Fax Number:
E-Mail: towen@boemortgage.com

**Client on Report:**
Angel Oak Mortgage Solutions LLC
980 Hammond Drive, Suite 850
Atlanta, GA, 30328

| REFERENCE |
|---|
| File #: 866725 |
| Loan #: 802107166354 |
| Reference #: - |
| Federal Tax ID: 26-3048093 |

## Borrower Information

Borrower: Brian Raymond
Address : 10 Old Stonebank Ln Nw,
Huntsville, AL 35806

| FEES | AMOUNT |
|---|---|
| **1004 URAR Conventional - SFR Interior 1 MM Property** | **$2665.00** |
| **Our Management Fee includes responsibilities and duties of administering and tracking the    appraisal process, ensuring proper selection of appraiser, acting as liaison between appraiser and    client, performing a quality audit of every report, and delivering a final copy. Pursuant to certain    state disclosure requirements, the fee is broken down as:** **Appraisers Fee= $2000.00, Management Fee= $665** | |

| PAYMENTS | AMOUNT |
|---|---|
| **Payment Status: Unpaid** | **$0.00** |

| | |
|---|---|
| **TOTAL DUE** | **$2665.00** |



#### ****Statement of Non-Influence and Appraiser Independence****

Subject Property: 10 Old Stonebank Ln Nw Huntsville, AL 35806
Appraisal Date: 08/26/2021 12:00:00 pm

-Nationwide Property & Appraisal Services, LLC (NPAS) - an independent, third-party appraisal management company - certifies that the above-referenced appraisal report was completed in compliance with the appropriate State and Federal regulations and   Appraiser Independence Requirements and in strict adherence to our non-influence policy and process:

-The Lender/Client named on the appraisal report submitted the appraisal order to NPAS.

-Appraiser selection was performed at the sole discretion of NPAS by utilizing selection criteria of proximity to the Subject Property, availability and historical quality and performance metrics.

-The terms and conditions of the engagement contract between NPAS and the appraiser prohibit the appraiser from communicating with the Lender/Client or attempting to obtain loan information from the borrower/property owner unless, in the appraiser's own professional judgment, other communications are necessary.  Only factual evidence for any change to report will be considered after the appraisal is completed and sent to the client.

-No estimation regarding the Subject Property's value, proposed loan amount, or proposed loan-to-value ratio, was provided or communicated by NPAS to the appraiser [For purchase transactions, the purchase agreement was provided to the appraiser as required by USPAP Standards Rule 1-5(a)]. FRAUD/TAMPERING PREVENTIONS:

Haley Freedman - Chief Valuation Officer

Nationwide Property & Appraisal Services, LLC



# CERTIFICATE OF EMAIL NOTIFICATION

Appraisal Report Has Been Emailed
to:
Braymond@attemptassanity.com
For:
Brian Raymond
10 Old Stonebank Ln Nw
Huntsville AL 35806

**Order#**     866725
**Client Loan#** 802107166354
**Completed Date:**   09/09/2021
**Report Emailed On:**
09/09/2021 08:29:37 am



Nationwide Property & Appraisal Services, 1103 Laurel Oak Rd. Suite 160 Voorhees, NJ 08043

# APPRAISAL REPORT OF

**BRIAN RAYMOND**

**10 OLD STONEBANK LN NW**

**HUNTSVILLE, AL 35806**

## AS OF

08/26/2021

## PREPARED FOR

**NATIONWIDE PROPERTY & APPRAISAL SERVICES**
**ANGEL OAK MORTGAGE SOLUTIONS LLC**
**980 HAMMOND DR SUITE 850**
**ATLANTA, GA 30328**

## PREPARED BY

MARK S. GORDON
GORDON APPRAISAL GROUP
312 Broadway Lane
Madison, AL 35757



GORDON APPRAISAL GROUP

**MARK S GORDON, CRA**

File No.
Nationwide 866725

## Uniform Residential Appraisal Report

The purpose of this appraisal report is to provide the lender/client with an accurate, and adequately supported, opinion of the market value of the subject property.

**SUBJECT**

| | | |
|---|---|---|
| Property Address | 10 OLD STONEBANK LN NW | City HUNTSVILLE State AL Zip Code 35806 |
| Borrower BRIAN RAYMOND | Owner of Public Record SAM & EMILY BRYAN | County MADISON |

Legal Description LOT 30, THE VILLAGE OF PROVIDENCE , PHASE VIII

Assessor's Parcel # 15-07-26-1-000-002.035  Tax Year 2022  R.E. Taxes $ 4,597

Neighborhood Name NW HUNTSVILLE -VILLAGE OF PROVIDENCE  Map Reference R71-E2/22  Census Tract 0106.22

Occupant [X] Owner [ ] Tenant [ ] Vacant Special Assessments $ 0  [X] PUD  HOA $ 1,925  [X] per year [ ] per month

Property Rights Appraised [X] Fee Simple [ ] Leasehold [ ] Other (describe)

Assignment Type [X] Purchase Transaction [ ] Refinance Transaction [ ] Other (describe) CONVENTIONAL PURCHASE

Lender/Client ANGEL OAK MORTGAGE SOLUTIONS LLC  Address 980 HAMMOND DR SUITE 850, ATLANTA, GA 30328

Is the subject property currently offered for sale or has it been offered for sale in the twelve months prior to the effective date of this appraisal? [X] Yes [ ] No

Report data source(s) used, offerings price(s), and date(s). DOM 56;Subject property was offered for sale;Latest Price $1,575,000;Latest Date 07/23/2021;Original Price $1,575,000;Original Date 05/26/2021;VALLEY MLS #1782063

I [X] did [ ] did not analyze the contract for sale for the subject purchase transaction. Explain the results of the analysis of the contract for sale or why the analysis was not performed. Arms length sale;CONTRACT FOR SALE CONTAINED NORMAL AND CUSTOMARY PHRASES, CLAUSES AND CONDITIONS FOR SIMILAR SALES IN AREA. NO APPRAISAL CONTINGENCY, APPLIANCES CONVEY, SOME SMALL REPAIRS,

**CONTRACT**

Contract Price $ 1,550,000  Date of Contract 05/21/2021  Is the property seller the owner of public record? [X] Yes [ ] No  Data Source(s) PUBLIC RCDS

Is there any financial assistance (loan charges, sale concessions, gift or down payment assistance, etc.) to be paid by any party on behalf of the borrower? [ ] Yes [X] No

If Yes, report the total dollar amount and describe the items to be paid. $0;;

**NEIGHBORHOOD**

Note: Race and the racial composition of the neighborhood are not appraisal factors.

| Neighborhood Characteristics | | One-Unit Housing Trends | | One-Unit Housing | | Present Land Use % | |
|---|---|---|---|---|---|---|---|
| Location [ ] Urban [X] Suburban [ ] Rural | Property Values [X] Increasing [ ] Stable [ ] Declining | PRICE | AGE | One-Unit | 80 % |
| Built-Up [X] Over 75% [ ] 25-75% [ ] Under 25% | Demand/Supply [ ] Shortage [X] In Balance [ ] Over Supply | $ (000) | (yrs) | 2-4 Unit | 5 % |
| Growth [ ] Rapid [X] Stable [ ] Slow | Marketing Time [ ] Under 3 mths [X] 3-6 mths [ ] Over 6 mths | 999 Low | 0 | Multi-Family | 5 % |
| Neighborhood Boundaries NW HUNTSVILLE - NORTH OF I565, EAST OF JEFF RD, WEST OF HWY 53, | | 1,900 High | 200 | Commercial | 5 % |
| AND SOUTH OF BOB WADE LN. | | 1,300 Pred. | 40 | Other Vacant | 5 % |

Neighborhood Description SUBJECT AREA HAS HAS WIDE MIX OF AGES, QUALITY AND CONSTRUCTION STYLES AND TYPES. GENERALLY OLDER -WELL KEPT HOMES IN SUBDIVISIONS. SOME NEW CONSTRUCTION IN AREA. SOME COMMERCIAL USES IN AREA. AREA HAS GOOD PROXIMITY TO SHOPPING, SCHOOLS, HOSPITALS AND AMENITIES. SUB IN UPSCALE SD OF NEWER SIMILAR HOMES.

Market Conditions (including support for the above conclusions) 359 SINGLE FAMILY SALES IN LAST YEAR. AVEAGE PRICE PAID WAS $137,965 AFTER 56 DAYS ON MARKET. LIMITED SELLER CONCESSIONS. MARKET IS STABLE TO INCREASING OVER THE PAST 6 MONTHS. MARKET SLOWER FOR LARGER HOMES. INCREASED DEMAND IN SUBJECT AREA WITH LOWER INTEREST RATES, LESSENING INVENTORY.

**SITE**

| Dimensions 62' x 203' x 61' x 194' | Area 12208 sf | Shape RECTANGLE | View N;Res; |
|---|---|---|---|

Specific Zoning Classification R1A  Zoning Description RESIDENTIAL-VARIOUS SINGLE FAMILY USES.

Zoning Compliance [X] Legal [ ] Legal Nonconforming (Grandfathered Use) [ ] No Zoning [ ] Illegal (describe)

Is the highest and best use of subject property as improved (or as proposed per plans and specifications) the present use? [X] Yes [ ] No If No, describe. NO OTHER HIGHER USE WAS FOUND THAT WAS LEGALLY PERMISSIBLE OR ECONOMICALLY FEASIBLE.

| Utilities | Public | Other (describe) | | Public | Other (describe) | Off-site Improvements--Type | Public | Private |
|---|---|---|---|---|---|---|---|---|
| Electricity | [X] | | Water | [X] | | Street PAVED | [X] | |
| Gas | [X] | | Sanitary Sewer | [X] | | Alley NONE | | |

FEMA Special Flood Hazard Area [ ] Yes [X] No  FEMA Flood Zone "X"  FEMA Map # 01089C 0164E  FEMA Map Date 10/02/2014

Are the utilities and off-site improvements typical for the market area? [X] Yes [ ] No If No, describe. UTILITIES WERE FUNCTIONAL-ADEQUATE-TYPICAL

Are there any adverse site conditions or external factors (easements, encroachments, environmental conditions, land uses, etc.)? [ ] Yes [X] No If Yes, describe. NONE WERE NOTED OR WERE READILY OBSERVABLE.

**IMPROVEMENTS**

| General Description | Foundation | Exterior Description materials/condition | Interior materials/condition |
|---|---|---|---|
| Units [X] One [ ] One with Accessory Unit | [ ] Concrete Slab [ ] Crawl Space | Foundation Walls CONCRETE-GD | Floors HW-TILE-CRPT-GD |
| # of Stories 2 | [X] Full Basement [ ] Partial Basement | Exterior Walls HARDIPLANK-BV-GD | Walls SHTRCK-GD |
| Type [X] Det. [ ] Att. [ ] S-Det./End Unit | Basement Area 1913 sq. ft. | Roof Surface ASPHALT-GD | Trim/Finish WOOD-GD |
| [X] Existing [ ] Proposed [ ] Under Const. | Basement Finish 100 % | Gutters & Downspouts GALV MTL-GD | Bath Floor TILE-GD |
| Design (Style) 2 STORY | [X] Outside Entry/Exit [ ] Sump Pump | Window Type DH MTL-GD | Bath Wainscot TILE-FIBRGLS-GD |
| Year Built 2018 | Evidence of [ ] Infestation | Storm Sash/Insulated YES-GS | Car Storage [ ] None |
| Effective Age (Yrs) 2 | [ ] Dampness [ ] Settlement | Screens YES-GD | [X] Driveway # of Cars 3 |
| Attic [ ] None | Heating [X] FWA [ ] HWBB [ ] Radiant | Amenities [ ] Woodstove(s) # | Driveway Surface CONCRETE |
| [X] Drop Stair [ ] Stairs | [ ] Other | Fuel GAS | [X] Fireplace(s) # 1 [X] Fence PRIV-WD | [X] Garage # of Cars 3 |
| [ ] Floor [ ] Scuttle | Cooling [X] Central Air Conditioning | [X] Patio/Deck COV [ ] Porch COVERED | [ ] Carport # of Cars 0 |
| [ ] Finished [ ] Heated | [ ] Individual [ ] Other | [ ] Pool None [ ] Other None | [ ] Att. [ ] Det. [ ] Built-in |

Appliances [X] Refrigerator [X] Range/Oven [X] Dishwasher [X] Disposal [X] Microwave [X] Washer/Dryer [X] Other (describe) HOOD

Finished area above grade contains: 9 Rooms 4 Bedrooms 3.1 Bath(s) 3,753 Square Feet of Gross Living Area Above Grade

Additional features (special energy efficient items, etc.). HIGHER QUAL 2S BSMNT HOME,FORMAL LIVING/DINING,HW-TILE FLRS, ISO MASTER, FP,GRANITE, INSIDE UTIL,SS APPLIANCES,3 CAR GAR,FIN&UNFIN BSEMNT,SCRNED PORCH/*TOTAL LIVING AREAS= 6417/*TOTAL IMPROVED SF= 8601 SF.

Describe the condition of the property (including needed repairs, deterioration, renovations, remodeling, etc.). C3;Kitchen-updated-one to five years ago;Bathrooms-updated-one to five years ago;SUBJECT WAS IN GOOD CONDITION WITH NO MAJOR DEFERRED MAINTENANCE OR REPAIR ITEMS READILY OBSERVED OR NOTED. LESS THAN TYPICAL PHYSICAL DEPRECIATION DUE TO EFFECTIVE AGE/ CONDITION. NO FUNCTIONAL OR EXTERNAL DEPRECIATION. GOOD TO VERY GOOD QUALITY CONSTRUCTION.

Are there any physical deficiencies or adverse conditions that affect the livability, soundness, or structural integrity of the property? [ ] Yes [X] No If Yes, describe NO ADVERSE CONDITIONS WERE NOTED OR READILY OBSERVABLE.

Does the property generally conform to the neighborhood (functional utility, style, condition, use, construction, etc.)? [X] Yes [ ] No If No, explain SUBJECT CONFORMS WELL TO SURROUNDING NEIGHBORHOOD

Freddie Mac Form 70  March 2005  Fannie Mae Form 1004  March 2005

UAD Version 9/2011 Produced by ClickFORMS Software 800-622-8727  Page 1 of 31

**GORDON APPRAISAL GROUP**

File No.
Nationwide 866725

**\*\*RURAL AREA\*\***

# Uniform Residential Appraisal Report

There are **11** comparable properties currently offered for sale in the subject neighborhood ranging in price from $ **999,000** to $ **1,900,000**
There are **17** comparable sales in the subject neighborhood within the past twelve months ranging in sale price from $ **999,000** to $ **1,900,000**

| FEATURE | SUBJECT | COMPARABLE SALE # 1 | | COMPARABLE SALE # 2 | | COMPARABLE SALE # 3 | |
|---|---|---|---|---|---|---|---|
| Address | 10 OLD STONEBANK LN NW HUNTSVILLE, AL 35806 | 600 ADAMS ST HUNTSVILLE, AL 35801 | | 104 McMULLEN LN GURLEY, AL 35748 | | 9 HILLCREST AVE NW HUNTSVILLE, AL 35806 | |
| Proximity to Subject | | 6.87 miles E | | 12.97 miles E | | 0.15 miles NW | |
| Sale Price | $ 1,550,000 | $ 1,845,000 | | $ 1,329,372 | | $ 1,148,560 | |
| Sale Price/Gross Liv. Area | $ 413.00 sq. ft. | $ 458.50 sq. ft. | | $ 272.36 sq. ft. | | $ 312.28 sq. ft. | |
| Data Source(s) | | VALLYMLS#1782806;DOM 4 | | VALLYMLS#1783281;DOM 1 | | VALLYMLS#1141148;DOM 1 | |
| Verification Source(s) | | MADISON CO RCDS-BRKR | | MADISON CO PUB RCDS-BRKR | | MADISON CO PUB RCDS-BRKR | |
| VALUE ADJUSTMENTS | DESCRIPTION | DESCRIPTION | +(-) $ Adjustment | DESCRIPTION | +(-) $ Adjustment | DESCRIPTION | +(-) $ Adjustment |
| Sale or Financing | | ArmLth | | ArmLth | | ArmLth | |
| Concessions | | Cash;0 | 0 | Conv;0 | 0 | Conv;0 | 0 |
| Date of Sale/Time | | s08/21;c08/21 | 0 | s02/21;c02/21 | 0 | s08/20;c08/20 | +75,000 |
| Location | N;Res;PROVIDENCE | N;Res;QUIGLEY | 0 | N;Res;McMULLEN | 0 | N;Res;PROVIDENCE | 0 |
| Leasehold/Fee Simple | Fee Simple | FEE SIMPLE | | FEE SIMPLE | | FEE SIMPLE | |
| Site | 12208 sf | 16553 sf | 0 | 23522 sf | 0 | 9315 sf | 0 |
| View | N;Res; | N;Res; | | N;Res; | | N;Res; | |
| Design (Style) | DT2;2 STORY | DT2;2 STORY | | DT2;2 STORY | | DT2;2 STORY | |
| Quality of Construction | Q3 | Q3 | | Q3 | | Q3 | |
| Actual Age | 3 | 198 | 0 | 1 | -24,500 | 3 | |
| Condition | C3 | C3 | | C1 | | C3 | |
| Above Grade | Total Bdrms Baths | Total Bdrms Baths | | Total Bdrms Baths | | Total Bdrms Baths | |
| Room Count | 9 4 3.1 | 9 4 4.2 | -5,000 | 9 4 4.1 | -4,000 | 9 4 3.1 | |
| Gross Living Area | 3,753 sq. ft. | 4,024 sq. ft. | -26,829 | 4,881 sq. ft. | -111,672 | 3,678 sq. ft. | +7,425 |
| Basement & Finished | 1913sf1913sfwo | 1346sf1346sfwo | +27,783 | 0sf | +93,737 | 700sf700sfwo | +59,437 |
| Rooms Below Grade | 1rr2br1.0ba1o | 1rr0br0.0ba2o | 0 | | | 1rr1br1.0ba1o | |
| Functional Utility | GOOD | GOOD | | GOOD | | GOOD | |
| Heating/Cooling | CENT-HVAC | CENT-HVAC | | CENT-HVAC | | CENT-HVAC | |
| Energy Efficient Items | WINDOWS | WINDOWS | | WINDOWS | | WINDOWS | |
| Garage/Carport | 3ga3dw | 2dw | +30,000 | 3ga3dw | | 3ga3dw | |
| Porch/Patio/Deck | PORCHES | PORCHES | | PORCHES | | PORCHES | |
| FIREPLACE | FIREPLACE | FIREPLACE | | FIREPLACE | | FIREPLACE | |
| FENCE | FENCE | FENCE | | NONE | +3,000 | NONE | +3,000 |
| ADD'L AMENITIES:> | UNFIN BSMNT SF | UNFIN BSMNT SF | | IG POOL | -7,500 | NONE | +18,650 |
| Net Adjustment (Total) | | [X] + [ ] - | $ 25,954 | [ ] + [X] - | $ -50,935 | [X] + [ ] - | $ 163,512 |
| Adjusted Sale Price | | Net Adj. 1% | | Net Adj. -4% | | Net Adj. 14% | |
| of Comparables | | Gross Adj. 5% | $ 1,870,954 | Gross Adj. 18% | $ 1,278,437 | Gross Adj. 14% | $ 1,312,072 |

[ ] I did [X] did not research the sale or transfer history of the subject property and comparable sales. If not, explain

My research [ ] did [X] did not reveal any prior sales or transfers of the subject property for the three years prior to the effective date of this appraisal.
Data source(s) **VALLEY MLS-REALTRACS MLS-PUBLIC RCDS.**
My research [ ] did [X] did not reveal any prior sales or transfers of the comparable sales for the year prior to the date of sale of the comparable sale.
Data source(s) **VALLEY MLS-REALTRACS MLS-PUBLIC RCDS.**
Report the results of the research and analysis of the prior sale or transfer history of the subject property and comparable sales (report additional prior sales on page 3).

| ITEM | SUBJECT | COMPARABLE SALE # 1 | COMPARABLE SALE # 2 | COMPARABLE SALE #3 |
|---|---|---|---|---|
| Date of Prior Sale/Transfer | | | | |
| Price of Prior Sale/Transfer | | | | |
| Data Source(s) | VALLEY MLS-PUBLIC RCDS | VALLEY MLS-PUBLIC RCDS | VALLEY MLS-PUBLIC RCDS | VALLEY MLS-PUBLIC RCDS |
| Effective Date of Data Source(s) | 08/26/2021 | 08/26/2021 | 08/26/2021 | 08/26/2021 |

Analysis of prior sale or transfer history of the subject property and comparable sales **\*ONLY PRIOR SALE FOUND IN PUBLIC RECORDS WAS FOR THE LOT IN 2017 AND ASSOCIATED MORTGAGE FOR HOME. NO OTHER PRIOR LISTINGS OR SALES WERE FOUND.**

Summary of Sales Comparison Approach **VERY LIMITED COMPARABLES FOUND. SUBJECTS ELEMENTS OF COMPARISON WERE LOCATION GLA QUAL AGE CONDITION BR/BATHS GARAGES BASEMENT SF AND SITE SIZE. DUE TO SUBJECTS LOCATION AND AMENITIES HAD TO USE SOME OLDER MORE DISTANT COMPS. SCOPE OF ANALYSIS INCLUDED ALL COMPARABLE SALES LISTINGS FROM MADISON CO FOR THE LAST 3 YRS. \*BRACKETED\* MOST SUBJECTS AMENITIES WITH INFERIOR AND SUPERIOR SALES. NET/GROSS ADJUSTMENTS WITHIN NORMALLY ACCEPTED RANGES. WEIGHTED RECONCILLIATION OF COMPS GAVE THE WEIGHT OF THE ANALYSIS TO COMP 3 FROM THE SUBJECT SO AND LEAST WEIGHT TO COMP 1. BRACKETED RANGE OF VALUE FROM $1,278,437 TO $1871,954 SUBJECTS ADJUSTED VALUE INDICATION WITHIN THE ADJUSTED VALUE RANGE AND $/SF RANGE FOR ALL COMPS. \*\*SUBJECT HAD BEEN LISTED FOR $1,575,000. \*THERE WERE SUFFICIENT NUMBERS AND QUALITY OF COMPARABLES FOUND TO RENDER A CREDIBLE AND SUPPORTED VALUE INDICATION FOR THE SUBJECT.**

Indicated Value by Sales Comparison Approach $ **1,300,000**

Indicated Value by: Sales Comparison Approach $ **1,300,000** Cost Approach (if developed) $ **1,347,272** Income Approach (if developed) $
**\*\*RECONCILLIATION OF APPROACHES TO VALUE: (1) THE SALES COMPARISON APPROACH GAVE THE BEST INDICATION OF MARKET VALUE. MOST WEIGHT GIVEN THIS APPROACH. (2) COST APPROACH SUPPORTED THE OTHER APPROACHES TO VALUE. (3) INCOME APPROACH NOT PERFORMED/INDICATED. \*CONSIDERATION GIVEN CONTRACT LIST AND SALES PRICE.**

This appraisal is made [X] "as is," [ ] subject to completion per plans and specifications on the basis of a hypothetical condition that the improvements have been completed, [ ] subject to the following repairs or alterations on the basis of a hypothetical condition that the repairs or alterations have been completed, or [ ] subject to the following required inspection based on the extraordinary assumption that the condition or deficiency does not require alteration or repair:

Based on a complete visual inspection of the interior and exterior areas of the subject property, defined scope of work, statement of assumptions and limiting conditions, and appraiser's certification, my (our) opinion of the market value, as defined, of the real property that is the subject of this report is
$ **1,300,000** , as of **08/26/2021** , which is the date of inspection and the effective date of this appraisal.

Freddie Mac Form 70 March 2005        Fannie Mae Form 1004 March 2005

GORDON APPRAISAL GROUP

File No.
Nationwide 866725

## Uniform Residential Appraisal Report

**APPRAISAL REPORT IDENTIFICATION:**
THERE ARE ONLY 2 USPAP REPORTING OPTIONS FOR THE APPRAISAL, THE RESTRICTED REPORT AND THE APPRAISAL REPORT.
THIS ASSIGNMENT WILL BE DELIVERED AS AN APPRAISAL REPORT.

PRIOR SERVICES NOTE- I HAVE PERFORMED NO SERVICES FOR THE SUBJECT IN THE 3 YRS PRIOR TO ACCEPTING THIS APPRAISAL ASSIGNMENT.

ESTIMATED EXPOSURE TIME- THE ESTIMATED EXPOSURE TIME FOR THE SUBJECT PROPERTY IS 30 TO 90 DAYS.

DEFINITION OF MARKET VALUE- THE DEFINITION OF MARKET VALUE USED IN THIS REPORT WAS TAKEN FROM FANNIE MAE.

INTENDED USES AND USERS NOTE- THE INTENDED USERS OF THE APPRAISAL IS THE CLIENT / LENDER - ANGEL OAK MORTGAGE SOLUTIONS LLC.
THE INTENDED USE IS TO ASSIST THE CLIENT IN EVALUATING THE SUBJECT TO MEET LENDER GUIDELINES FOR A MORTGAGE BASED FINANCIAL
TRANSACTION. A CONVENTIONAL PURCHASE.

PRICE / SF NOTE-
THIS IS NOT AN ACCEPTABLE APPRAISAL PRACTICE FOR COMPARING HOMES AND PROPERTIES.
THERE ARE A NUMBER OF ADDL ITEMS THAT CAN EFFECT THE $/SF THAT ARE NOT INCLUDED IN THE GLA VALUE BUT THE MARKET RECOGNIZES
AS HAVING VALUE. I.E. POOLS, ACREAGE, ADD'L GARAGES, STORM SHELTERS, BASEMENTS ETC.
**THE SUBJECT CAN NOT BE COMPARED TO OTHER 3700 SF HOMES IN THE AREA WITHOUT CONSIDERED ALL THE NON GLA ELEMENTS OF
COMPARISON FOUND AT THE SUBJECT THAT THE MARKET RECOGNIZED AS ADDING VALUE TO THE SUBJECT.

UTILITIES NOTE- ALL UTILITIES, APPLIANCES AND MECHANICALS WERE ON AT THE SUBJECT AND ALL APPEARED IN GOOD WORKING ORDER.

APPLIANCE NOTES- ALL APPLIANCES WERE CONSIDERED CHATTEL -PERSONAL PROPERTY AND NOT GIVEN ANY CONSIDERATION IN VALUATION.

BRACKETING NOTE- EVERY ATTEMPT WAS MADE TO BRACKET THE SUBJECTS GLA BUT DUE TO THE LIMITED NUMBER OF COMPARABLES FOUND
WE WERE NOT ABLE TO. AN ATTEMPT WAS MADE TO BRACKET THE SUBJECTS TOTAL LIVING AREAS (GLA + BASEMENT SF) BUT THE SUBJECT STILL
HAD MORE TOTAL LIVING AREA SF THAN ANY OF THE COMPS.

AREA UNDER ANALYSIS-
DUE TO THE LACK OF COMPARABLE SALES THE AREA UNDER ANALYSIS HAD BE ENLARGED TO INCLUDE THE ENTIRE COUNTY AND WE WENT BACK
3 YRS IN THE RESEARCH/ANALYSIS LOOKING FOR COMPARABLE SALES/LISTINGS.
**THERE WERE A NUMBER OF SALES FOUND IN THE RESEARCH PRICE RANGE BUT FEW WERE ACTUALLY COMPARABLE TO THE SUBJECT.

SITE/LOCATION ADJUSTEMENTS - ALL COMPS WERE TAKEN FROM SIMILAR UPSCALE LOCATIONS THAT WOULD COMPETE WITH POTENTIAL
PURCHASERS FOR SIMILAR HOMES. SITE SIZE DID VARY BUT THE SALES PRICES OF THE LOTS WERE VERY SIMILAR. NO ADJUSTMENTS MADE.

*(left margin: ADDITIONAL COMMENTS)*

### COST APPROACH TO VALUE (not required by Fannie Mae.)

Provide adequate information for the lender/client to replicate your cost figures and calculations.
Support for the opinion of site value (summary of comparable land sales or other methods for estimating site value) SITE VALUE TAKEN BY SALES
COMPARISON APPROACH OF SIMILAR SITES IN THE AREA. LAND SALE DATA FOR APPROACH RETAINED IN APPRAISER WORK
FILE.

| ESTIMATED [ ] REPRODUCTION OR [X] REPLACEMENT COST NEW | OPINION OF SITE VALUE | | =$ | 174,000 |
|---|---|---|---|---|
| Source of cost data MARSHALL & SWIFT COST APPROACH. | Dwelling 3,753 Sq. Ft. @$ 199.00 | | =$ | 746,847 |
| Quality rating from cost service GD-VGD Effective date of cost data 08/26/2021 | Bsmt. 1,913 Sq. Ft. @$ 124.00 | | =$ | 237,212 |
| Comments on Cost Approach (gross living area calculations, depreciation, etc.) | APPLI,POR,FIN,FP | | =$ | 149,855 |
| BASE COST/SF = GOOD TO VERY GOOD QUALITY PER M&S x | Garage/Carport 840 Sq. Ft. @$ 34.00 | | =$ | 28,560 |
| LOCAL MULTIPLIERS. SITE VALUE BY SALES COMPARISON | Total Estimate of Cost-new | | =$ | 1,162,474 |
| APPROACH. DEPRECIATION BY M&S - AGE LIFE METHOD. LESS | Less Physical 3 Functional 0 External 0 | | | |
| THAN TYPICAL PHYSICAL DEPRECIATION DUE TO EFF AGE/ | Depreciation 34,874 0 0 | | =$ | 34,874 |
| CONDITION. NO FUNCTIONAL OR EXTERNAL DEPRECIATION. | Depreciated Cost of Improvements | | =$ | 1,127,600 |
| | "As-is" Value of Site Improvements | | =$ | 45,672 |
| Estimated Remaining Economic Life (HUD and VA only) 58 Years | Indicated Value By Cost Approach | | =$ | 1,347,272 |

*(left margin: COST APPROACH)*

### INCOME APPROACH TO VALUE (not required by Fannie Mae.)

| Estimated Monthly Market Rent $ | X Gross Multiplier | =$ | Indicated Value by Income Approach |
|---|---|---|---|
| Summary of Income Approach (including support for market rent and GRM) | | | |

*(left margin: INCOME)*

### PROJECT INFORMATION FOR PUDs (if applicable)

| Is the developer/builder in control of the Homeowner's Association (HOA)? [ ] Yes [X] No Unit type(s) [X] Detached [ ] Attached | | |
|---|---|---|
| Provide the following information for PUDs ONLY if the developer/builder is in control of the HOA and the subject property is an attached dwelling unit. | | |
| Legal Name of Project | | |
| Total number of phases | Total number of units | Total number of units sold |
| Total number of units rented | Total number of units for sale | Data source(s) |
| Was the project created by the conversion of existing building(s) into a PUD? [ ] Yes [ ] No If Yes, date of conversion. | | |
| Does the project contain any multi-dwelling units? [ ] Yes [ ] No Data source. | | |
| Are the units, common elements, and recreation facilities complete? [ ] Yes [ ] No If No, describe the status of completion. | | |
| Are the common elements leased to or by the Homeowner's Association? [ ] Yes [ ] No If Yes, describe the rental terms and options. | | |
| Describe common elements and recreational facilities. | | |

*(left margin: PUD INFORMATION)*

**GORDON APPRAISAL GROUP**
**EXTRA COMPARABLES 4-5-6**

File No.
Nationwide  **866725**

| | |
|---|---|
| Borrower | **BRIAN RAYMOND** |
| Property Address | **10 OLD STONEBANK LN NW** |
| City **HUNTSVILLE** County **MADISON** | State **AL** Zip Code **35806** |
| Lender/Client **ANGEL OAK MORTGAGE SOLUTIONS LLC** Address 980 HAMMOND DR SUITE 850, ATLANTA, GA 30328 | |

| FEATURE | SUBJECT | COMPARABLE SALE # 4 | | COMPARABLE SALE # 5 | | COMPARABLE SALE # 6 | |
|---|---|---|---|---|---|---|---|
| Address | 10 OLD STONEBANK LN NW | 2602 MUIR WOODS DR | | 51 RIDGE BLUFF CIR | | | |
| | HUNTSVILLE, AL 35806 | HAMPTON COVE , AL 35763 | | HUNTSVILLE, AL 35803 | | | |
| Proximity to Subject | | 13.18 miles E | | 14.39 miles SE | | | |
| Sale Price | $ 1,550,000 | $ 1,126,000 | | $ 1,444,090 | | $ | |
| Sale Price/Gross Liv. Area | $ 413.00 sq. ft. | $ 397.04 sq. ft. | | $ 307.58 sq. ft. | | $ sq. ft. | |
| Data Source(s) | | VALLYMLS#1781919;DOM 1 | | VALLYMLS#1786531;DOM 1 | | | |
| Verification Source(s) | | MADISON CO PUBLIC RCDS | | MADISON CO PUBLIC RCDS | | | |
| VALUE ADJUSTMENTS | DESCRIPTION | DESCRIPTION | +(-) $ Adjustment | DESCRIPTION | +(-) $ Adjustment | DESCRIPTION | +(-) $ Adjustment |
| Sale or Financing | | ArmLth | | Listing | | | |
| Concessions | | Conv;0 | 0 | PENDING;0 | 0 | | |
| Date of Sale/Time | | s05/21;c05/21 | 0 | c08/21 | 0 | | |
| Location | N;Res;PROVIDENCE | N;Res;HIGHLANDS | 0 | N;Res;INSPIRATION | 0 | | |
| Leasehold/Fee Simple | Fee Simple | FEE SIMPLE | | FEE SIMPLE | | | |
| Site | 12208 sf | 20038 sf | 0 | 23958 sf | 0 | | |
| View | N;Res; | N;Res; | | N;Res; | | | |
| Design (Style) | DT2;2 STORY | DT1;RANCH | 0 | DT2;2 STORY | | | |
| Quality of Construction | Q3 | Q3 | | Q3 | | | |
| Actual Age | 3 | 0 | -24,500 | 0 | -24,500 | | |
| Condition | C3 | C1 | 0 | C1 | 0 | | |
| Above Grade | Total Bdrms Baths | Total Bdrms Baths | +2,000 | Total Bdrms Baths | | Total Bdrms Baths | |
| Room Count | 9 4 3.1 | 7 3 3.1 | | 9 4 3.1 | | | |
| Gross Living Area | 3,753 sq. ft. | 2,836 sq. ft. | +90,783 | 4,695 sq. ft. | -93,258 | sq. ft. | |
| Basement & Finished | 1913sf1913sfwo | 2518sf2518sfwo | -29,645 | 0sf | +93,737 | | |
| Rooms Below Grade | 1rr2br1.0ba1o | 1rr2br1.1ba1o | 0 | | | | |
| Functional Utility | GOOD | GOOD | | GOOD | | | |
| Heating/Cooling | CENT-HVAC | CENT-HVAC | | CENT-HVAC | | | |
| Energy Efficient Items | WINDOWS | WINDOWS | | WINDOWS | | | |
| Garage/Carport | 3ga3dw | 4ga4dw | -10,000 | 3ga3dw | | | |
| Porch/Patio/Deck | PORCHES | PORCHES | | PORCHES | | | |
| FIREPLACE | FIREPLACE | FIREPLACE | | FIREPLACE | | | |
| FENCE | FENCE | NONE | +3,000 | NONE | +3,000 | | |
| ADD'L AMENITIES:> | UNFIN BSMNT SF | NONE | +18,650 | NONE | +18,650 | | |
| Net Adjustment (Total) | | X + - | $ 50,288 | + X - | $ -2,371 | + - | $ |
| Adjusted Sale Price | | Net Adj: 4% | | Net Adj: 0% | | Net Adj: 0% | |
| of Comparables | | Gross Adj: 16% | $ 1,176,288 | Gross Adj: 16% | $ 1,441,719 | Gross Adj: 0% | $ |

Report the results of the research and analysis of the prior sale or transfer history of the subject property and comparable sales

| ITEM | SUBJECT | COMPARABLE SALE # 4 | COMPARABLE SALE # 5 | COMPARABLE SALE # 6 |
|---|---|---|---|---|
| Date of Prior Sale/Transfer | | | | |
| Price of Prior Sale/Transfer | | | | |
| Data Source(s) | VALLEY MLS-PUBLIC RCDS | VALLEY MLS-PUBLIC RCDS | VALLEY MLS-PUBLIC RCDS | |
| Effective Date of Data Source(s) | 08/26/2021 | 08/26/2021 | 08/26/2021 | |

Analysis of prior sale or transfer history of the subject property and comparable sales

Summary of Sales Comparison Approach

*SALES COMPARISON ANALYSIS*

GORDON APPRAISAL GROUP
## LOCATION MAP ADDENDUM

File No.
Nationwide 866725

| Borrower | **BRIAN RAYMOND** | | | | | | |
|---|---|---|---|---|---|---|---|
| Property Address | **10 OLD STONEBANK LN NW** | | | | | | |
| City **HUNTSVILLE** | County | **MADISON** | State | **AL** | Zip Code | **35806** |
| Lender/Client | **ANGEL OAK MORTGAGE SOLUTIONS LLC** | Address | 980 HAMMOND DR SUITE 850, ATLANTA, GA 30328 | | | |



**GORDON APPRAISAL GROUP**
Subject Photos

File No.
Nationwide **866725**

| | |
|---|---|
| Borrower | **BRIAN RAYMOND** |
| Property Address | **10 OLD STONEBANK LN NW** |
| City **HUNTSVILLE** County **MADISON** State **AL** Zip Code **35806** |
| Lender/Client **ANGEL OAK MORTGAGE SOLUTIONS LLC** Address **980 HAMMOND DR SUITE 850, ATLANTA, GA 30328** |



SUBJECT FRONT



SUBJECT FRONT AND SOUTHERN ELEVATIONS



SUBJECT FRONT AND NORTHERN ELEVATIONS



SUBJECT REAR



STREET SCENE



SUBJECT REAR AND SOUTHERN ELEVATIONS

## GORDON APPRAISAL GROUP
### Subject Photos

File No.
Nationwide **866725**

| | |
|---|---|
| Borrower | **BRIAN RAYMOND** |
| Property Address | **10 OLD STONEBANK LN NW** |
| City **HUNTSVILLE** County | **MADISON** State **AL** Zip Code **35806** |
| Lender/Client **ANGEL OAK MORTGAGE SOLUTIONS LLC** | Address 980 HAMMOND DR SUITE 850, ATLANTA, GA 30328 |



**KITCHEN**



**FORMAL LIVING / STUDY**



**LIVING ROOM**



**UTILITY ROOM**



**FORMAL DINING**



**HALF BATH**

**GORDON APPRAISAL GROUP**
**Subject Photos**

File No.
Nationwide **866725**

| | |
|---|---|
| Borrower | **BRIAN RAYMOND** |
| Property Address | **10 OLD STONEBANK LN NW** |
| City **HUNTSVILLE** County **MADISON** State **AL** Zip Code **35806** |
| Lender/Client **ANGEL OAK MORTGAGE SOLUTIONS LLC** Address 980 HAMMOND DR SUITE 850, ATLANTA, GA 30328 |



BEDROOM



BATH



BEDROOM



BATH



BEDROOM



BATH

**GORDON APPRAISAL GROUP**
Subject Photos

File No.
Nationwide **866725**

| | |
|---|---|
| Borrower | **BRIAN RAYMOND** |
| Property Address | **10 OLD STONEBANK LN NW** |
| City **HUNTSVILLE** | County **MADISON** State **AL** Zip Code **35806** |
| Lender/Client **ANGEL OAK MORTGAGE SOLUTIONS LLC** | Address **980 HAMMOND DR SUITE 850, ATLANTA, GA 30328** |



BEDROOM



BASEMENT DEN



BASEMENT BEDROOM



BASEMENT WET BAR



BASEMENT BEDROOM



BASEMENT BATH

**GORDON APPRAISAL GROUP**
Subject photos

File No.
Nationwide **866725**

| | | | | | | |
|---|---|---|---|---|---|---|
| Borrower | **BRIAN RAYMOND** | | | | | |
| Property Address | **10 OLD STONEBANK LN NW** | | | | | |
| City **HUNTSVILLE** | County | **MADISON** | State | **AL** | Zip Code | **35806** |
| Lender/Client | **ANGEL OAK MORTGAGE SOLUTIONS LLC** | Address | **980 HAMMOND DR SUITE 850, ATLANTA, GA 30328** | | | |



BACK YARD VIEW



OPEN SIDE PORTH/ PATIO



SCREENED PORCH



BASEMENT COVERED PORCH



HVACs



STREET SCENE

**GORDON APPRAISAL GROUP**
Subject Photos - MISC

File No.
Nationwide **866725**

| Borrower | BRIAN RAYMOND | | | | |
|---|---|---|---|---|---|
| Property Address | 10 OLD STONEBANK LN NW | | | | |
| City HUNTSVILLE | County | MADISON | State | AL | Zip Code 35806 |
| Lender/Client | ANGEL OAK MORTGAGE SOLUTIONS LLC | Address | 980 HAMMOND DR SUITE 850, ATLANTA, GA 30328 | | |



GARAGE



PANTRY WITH BUILTINS



STREET SCENE



UNFINISHED BASEMENT AREA



UTILITIES ON

**GORDON APPRAISAL GROUP**
**COMPARABLES 1-2-3**

File No.
Nationwide **866725**

| Borrower | **BRIAN RAYMOND** | | | | | |
|---|---|---|---|---|---|---|
| Property Address | **10 OLD STONEBANK LN NW** | | | | | |
| City **HUNTSVILLE** | County | **MADISON** | State | **AL** | Zip Code | **35806** |
| Lender/Client | **ANGEL OAK MORTGAGE SOLUTIONS LLC** | Address | 980 HAMMOND DR SUITE 850, ATLANTA, GA 30328 | | | |



**COMPARABLE SALE #**    **1**
600 ADAMS ST
HUNTSVILLE, AL 35801



**COMPARABLE SALE #**    **2**
104 McMULLEN LN
GURLEY, AL 35748



**COMPARABLE SALE #**    **3**
9 HILLCREST AVE NW
HUNTSVILLE, AL 35806

**GORDON APPRAISAL GROUP**
**COMPARABLES 4-5-6**

File No.
Nationwide **866725**

| | |
|---|---|
| Borrower | **BRIAN RAYMOND** |
| Property Address | **10 OLD STONEBANK LN NW** |
| City **HUNTSVILLE** County | **MADISON** State **AL** Zip Code **35806** |
| Lender/Client **ANGEL OAK MORTGAGE SOLUTIONS LLC** | Address **980 HAMMOND DR SUITE 850, ATLANTA, GA 30328** |



**COMPARABLE SALE #    4**
2602 MUIR WOODS DR
HAMPTON COVE , AL 35763



**COMPARABLE SALE #    5**
51 RIDGE BLUFF CIR
HUNTSVILLE, AL 35803

**COMPARABLE SALE #    6**

## GORDON APPRAISAL GROUP
## SKETCH ADDENDUM

File No.
Nationwide **866725**

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| Borrower | **BRIAN RAYMOND** | | | | | | |
| Property Address | **10 OLD STONEBANK LN NW** | | | | | | |
| City **HUNTSVILLE** | County | **MADISON** | State | **AL** | Zip Code | **35806** | |
| Lender/Client | **ANGEL OAK MORTGAGE SOLUTIONS LLC** | Address | 980 HAMMOND DR SUITE 850, ATLANTA, GA 30328 | | | | |







File No.
Nationwide  866725



| | | |
|---|---|---|
| MLS #: | 1782063 | **RESIDENTIAL** Pending |
| County: | **MADISON** | EOM Date: |
| Address: | **10 OLD STONEBANK LANE NW** | |
| City: | **HUNTSVILLE** | |
| State | **AL** | |
| Subdivision/ Neighborhood | **VILLAGE OF PROVIDENCE** | |
| Lot Size: | **60x194** | |
| Acreage: | | |
| Elementary: | **PROVIDENCE ELEMENTARY** | |
| High: | **COLUMBIA HIGH** | |
| Property Facts | All information & measurements TBV by purchaser prior to contract. | |

LP:     $1,575,000
Type:   SF
Unit #:
Zip:    35806
CityLimits?  Yes
Lot:    30
Block   n/a
Middle:  WILLIAMS
Other
Pro/SqFt   $277.73
OrigBySNm   VALLEYMLS
Orig Listing ID   1782063

MediaLink1                                   📷 Schedule a Showing

**DIRECTIONS**  HWY 72 West, North on Providence Main St, Left on Town Center Dr, Left off Broadway, Right on Gates Mill (over the bridge), Right on Hillcrest Ave, Right on Old Stonebank Lane, house is on the Right.
**LEGAL DESCRIPTION**  The Village of Providence | Phase 8 | Lot 30
Custom Home Pre-sale - SOLD before distribution. Entry for the purpose of comps. Raised Slab Construction. Contract based off preliminary info & preliminary square footage. Details to be updated prior to closing.

| Room | Dim. | Lvl | Desc | Room | Dim. | L | Desc | # of |
|---|---|---|---|---|---|---|---|---|
| LIVING | 21x17 | 1 | 10C, CM, FR, SC, WF | STUDY | 12x11 | 1 | 10C, CM, SC, WF | Bedrms:  4 |
| KITCHEN | 18x13 | 1 | 10C, CM, KI, PA, SC, WB | BEDROOM2 | 12x12 | 1 | 10C, CM, SC, WF | Rooms:  9 |
| MASTER BR | 17x15 | 1 | CM, SC, VC, WF, WK | BEDROOM3 | 15x13 | 2 | 9C, CP, SC | TotBaths:  5 |
| DINING | 17x12 | 1 | 10C, CM, SC, WF | BEDROOM4 | 13x13 | 2 | 9C, CP, SC | FullBaths:  3 |
| | | | | PLAY | 19x12 | 2 | 9C, CP, SC | 3/4Baths:  1 |
| | | | | | | | | 1/2Baths:  1 |
| | | | | | | | | Sep Shower |
| | | | | | | | | Whirlpool |
| | | | | | | | | Handicap ... |
| | | | | | | | | Handicap Int |

Tot Fin Sqft A... 5,671     Unfinished S... 746      SQFT SOURCE: Plans/Specs
1st Level Sqft: 2,681      Basement Sqft: 1,913     Foreclosure:N
2nd Level Sqft: 1,077      Garage Sqft/Dim          Short Sale  N
Detached Finished Sqft

Listing Agent - License ID                72234
Firm License #
Co-Listing Agent - License ID

Jimmy Bryan Construction, welcomes ALL co-op realtors! While you are showing, please stop by our New Homes Sales Office located at 7 Town Center Dr. Suite 102 Huntsville, AL 35806. It is recommended to schedule an appointment to ensure agent availability. Village of Providence contract is used for all purchase agreements. See on-site agent for HOA information and other details.

STYLE  2 Story, Traditional, Open Floor Plan
CONSTRUCTION  Fiber Cement Siding
SUB STRUCTURE  Basement
FIREPLACE  One, Gas Log
HEAT  Central 1
AIR CONDITION  Central 1
GARAGE/CARPORT  Three Car Garage, Side Entry
Detached Garage  No
CERTIFIED GREEN  No

LEASE PROPERTY Y/N
APX AGE  1-5 Years
TAX YEAR BUILT
PARCEL #  15-07-26-1-000-002.035
SELLING TERMS  Conv
OUTDOOR  Front Porch, Screened Porch
WATER/SEWER  Public Sewer, Public Water
BUILDERS NAME  JIMMY BRYAN CONSTRUCTION
Non-Owner Occupied Y/N  No
Investment Tenant Option

OA?  Yes
OA Terms  Yrly
OA Fee $  1,925
OA Phone #  256.665.9284
OAPNTCNM  Marion Myers
MAINTENANCE FEE  No
GATED COMMUNITY  No

Owner 1 First Name  Sam and Emry
Owner 1 Last Name  Bryan

Owner 2 First Name
Owner 2 Last Name

Owners Phone

DOM 0
CDOM 0
OCC y/n  Y

LstAgt  MK3356     Kim McDowell
LstOff  152200  A  Providence Properties LLC
Co-...
Co-...

CELL: 256-527-2709
OFC: 256-701-4646

Show:  CLA
Sub-Agt:  0%
BuyBr...  3%
Code:  0

Trans...  3%
Other:
%

Contract D... 5/28/2021   Closed Date       Purchaser:
SellOff:
SellAgt
Sale Not...

S...         NegCC:
Sold Terms:
Sold 1st level Sqft

...
Sold Price Per Sqft

Information deemed reliable but not guaranteed-Copyright 2021 by ValleyMLS.com. No representation is made that any of the particulars concerning the listed properties is accurate. No attempt has been made to verify any of such information and it is only contained for the convenience of the member REALTORS ® to help them narrow searches of properties. The Association strongly recommends that any such information be independently verified by all prospective purchasers prior to the execution of any agreement concerning that property.

Prepared...   Mark S Gordon      of        Gordon Appraisal Group                  09/07/2021 09:37 AM

File No.
Nationwide 866725



## PROPERTY HISTORY DETAIL

**Address**
10 OLD STONEBANK LANE NW
HUNTSVILLE, AL 35806

MLS #1782063

| MLS # 1782063 | | | Class RESIDENTIAL | | | List Date 5/26/2021 | | CDOM 0 | | DOM 0 | |
|---|---|---|---|---|---|---|---|---|---|---|---|
| Chg Date | Chg Type | Type | APX AGE | Status | County | Price | | Listing Agent - Agent Name | Listing Office - Office Name | Owner 1 First Name | |
| 07/23/2021 9:29:16 AM | Compensation Type: Choose $ or % | Single Family Detached | 1-5 Years | Pending | MADISON | $1,575,000 | | Kim McDowell | Providence Properties LLC | Sam and Emry | |
| 05/26/2021 9:18:53 AM | Status, Subdivision | Single Family Detached | 1-5 Years | Pending | MADISON | $1,575,000 | | Kim McDowell | Providence Properties LLC | Sam and Emry | |
| 05/26/2021 9:17:09 AM | First Recorded Entry | Single Family Detached | 1-5 Years | ACTIVE | MADISON | $1,575,000 | | Kim McDowell | Providence Properties LLC | Sam and Emry | |

File No.
Nationwide **866725**



# MADISON COUNTY
Property Appraisal and Tax Payments

Current Date: 9/2/2021    Tax Year: 2022 ▼      Get Help

⚠ Values and Taxes are estimates and are subject to change, Click here for the current amount due.

## Parcel Info

| | |
|---|---|
| **PIN** | 542331 |
| **PARCEL** | 15-07-26-1-000-002.035 |
| **ACCOUNT NUMBER** | 471212 |
| **OWNER** | BRYAN, SAM & EMRY |
| **MAILING ADDRESS** | 10 OLD STONEBANK LN NW,  HUNTSVILLE, AL 35806 |
| **PROPERTY ADDRESS** | 10 OLD STONEBANK LN NW |
| **LEGAL DESCRIPTION** | LOT 30 THE VILLAGE OF PROVIDENCE PH VIII PB # 20140725000392650 |
| **EXEMPT CODE** | |
| **TAX DISTRICT** | HUNTSVILLE |



## Tax Information

TAXES ARE DUE ON 10/1/2022

| YEAR | TAX DUE | PAID | BALANCE |
|---|---|---|---|
| 2022 | $ 4,597.08 | $ 0.00 | $ 4,597.08 |

LAST PAYMENT DATE **N/A**
PAID BY

## Property Values

| | |
|---|---|
| **Total Acres** | |
| **Use Value** | $0 |
| **Land Value** | $150,000 |
| **Improvement Value** | $642,600 |
| **Total Appraised Value** | $792,600 |
| **Total Taxable Value** | $792,600 |
| **Assessment Value** | $79,260 |

## Subdivision Information

| | |
|---|---|
| **Code** | 8663 |
| **Name** | VILLAGE OF PROVIDENCE PH VIII |
| **Lot** | 30 |
| **Block** | |
| **Type / Book / Page** | SURV / 2018 / 39830 |
| **S/T/R** | 26-3S-2W |

🔍 DEED SEARCH

## Detail Information

| TYPE | REF | DESCRIPTION | LAND USE | TC | HS | PN | APPRAISED VALUE |
|---|---|---|---|---|---|---|---|
| LAND | 1 | | 1110-ONE FAMILY | 3 | N | N | $150,000 |
| RES/COM | 1 | 111 - SINGLE FAMILY RESIDENCE | - | 3 | N | N | $642,600 |

## Building Components

File No.
Nationwide 866725



File No.
Nationwide 866725

# COUNTER-OFFER

Receipt is acknowledged of an Offer to purchase the real property described as: Address_____
10 Old Stonebank Lane Northwest_____ City Huntsville_____ State AL___ Zip 35806
dated 05/21/2021_____, between Seller(s): Sam Bryan and Emry Bryan_____
and Purchaser(s): Brian Raymond and Jessica Brady Graves_____

Such Offer is hereby rejected and the following Counter-Offer is hereby submitted:

1. All terms, provisions and conditions of the Offer as stated above, remain the same except as follows:

sales price to be $1,575,000 ; no appraisal contingency

buyer to obtain occupancy on closing July 30,2021; If closing occurs on or before July 23rd, buyer will give
seller 7 days to vacate property

all addendum 1 items to be complete by seller within 2 weeks post closing; if closing is on July 30, 2021 buyers
will be in possession of house as work to complete items is in process

2. The Seller reserves the right to accept any other Offer prior to Purchaser's written acceptance of this Counter-Offer. Acceptance shall not be effective until personally received and acknowledged by Kimberly McDowell _____ (Listing Agent) as evidenced by signing the Binding Agreement Date below.
3. This Counter-Offer shall expire unless a signed copy of acceptance is delivered to the person(s) making this Counter-Offer (or their agent) by _____ ☐ a.m. ☐ p.m. on _____ (date).
4. Upon acceptance by both parties, as herein specified, this Counter-Offer together with the offer of the Purchaser, and any addendums, shall compose the entire agreement between the parties hereto.

5. This Counter-Offer is hereby executed by the undersigned and receipt of a copy is hereby acknowledged.

_Sam Bryan_____
DATE

_Emry Bryan_____
DATE

_____
DATE

6. The undersigned hereby accept(s) the above Counter-Offer.

_Brian Raymond_____
DATE

_Jessica Brady Graves_____
DATE

_____
DATE

This Counter Offer is hereby rejected. INITIALS____ DATE____ INITIALS____ DATE____ INITIALS____ DATE____

**BINDING AGREEMENT DATE:** The listing agent confirms that the contract was accepted and delivered to all parties (and/or their representatives) either in writing or electronically and the date to begin contract performance is:

Date:_____ by _Kim McDowell_____
Binding Agreement Date        Listing Agent Signature

Counter Offer Form                          Page 1 of 1                          (Revised 11-2016)
THE USE OF THIS FORM BY ANY ONE OTHER THAN A REALTOR® MEMBER IS STRICTLY PROHIBITED
Copyright© by Huntsville Area Association of REALTORS®, Inc.

GORDON APPRAISAL GROUP

## Market Conditions Addendum to the Appraisal Report

File No.
Nationwide 866725

The purpose of this addendum is to provide the lender/client with a clear and accurate understanding of the market trends and conditions prevalent in the subject neighborhood. This is a required addendum for all appraisal reports with an effective date on or after April 1, 2009.

| Property Address | 10 OLD STONEBANK LN NW | City | HUNTSVILLE | State | AL | ZIP Code | 35806 |
|---|---|---|---|---|---|---|---|
| Borrower | BRIAN RAYMOND | | | | | | |

**Instructions:** The appraiser must use the information required on this form as the basis for his/her conclusions and must provide support for those conclusions, regarding housing trends and overall market conditions as reported in the Neighborhood section of the appraisal report form. The appraiser must fill in all the information to the extent it is available and reliable and must provide analysis as indicated below. If any required data is unavailable or is considered unreliable, the appraiser must provide an explanation. It is recognized that not all data sources will be able to provide data for the shaded areas below; if it is available, however, the appraiser must include that data in the analysis. If data sources provide all the required information as an average instead of the median, the appraiser should report the available figure and identify it as an average. Sales and listings must be properties that compete with the subject property, determined by applying the criteria that would be used by a prospective buyer of the subject property. The appraiser must explain any anomalies in the data, such as seasonal markets, new construction, foreclosures, etc.

| Inventory Analysis | Prior 7-12 Months | Prior 4-6 Months | Current - 3 Months | Overall Trend | | | | | |
|---|---|---|---|---|---|---|---|---|---|
| Total # of Comparable Sales (Settled) | 10 | 6 | 1 | X Increasing | | Stable | | Declining | |
| Absorption Rate (Total Sales/Months) | 1.67 | 2.00 | 0.33 | Increasing | X | Stable | | Declining | |
| Total # of Comparable Active Listings | 5 | 4 | 2 | Declining | X | Stable | | Increasing | |
| Months of Housing Supply (Total Listings/Ab. Rate) | 2.99 | 2.00 | 6.06 | Declining | X | Stable | | Increasing | |

| Median Sale & List Price, DOM, Sale/List % | Prior 7-12 Months | Prior 4-6 Months | Current - 3 Months | Overall Trend | | | | | |
|---|---|---|---|---|---|---|---|---|---|
| Median Comparable Sales Price | 1,315,300 | 1,345,000 | 1,845,000 | X Increasing | | Stable | | Declining | |
| Median Comparable Sales Days on Market | 45 | 36 | 4 | Declining | X | Stable | | Increasing | |
| Median Comparable List Price | 1,350,000 | 1,385,000 | 1,900,000 | Increasing | X | Stable | | Declining | |
| Median Comparable Listings Days on Market | 67 | 45 | 18 | Declining | X | Stable | | Increasing | |
| Median Sale Price as % of List Price | 98.00 | 99.00 | 99.00 | Increasing | X | Stable | | Declining | |
| Seller-(developer, builder, etc.) paid financial assistance prevalent? | | Yes | No | | Declining | X | Stable | | Increasing |

Explain in detail seller concessions trends for the past 12 months (e.g. seller contributions increased from 3% to 5%, increasing use of buydowns, closing costs condo fees, options, etc.)
SELLERS HAVE TYPICALLY PAID 1-5% IN CLOSING COSTS AND SELLER CONCESSIONS FOR THE PAST 3 YRS BUT THIS HAS DRAMATICALLY LESSENED IN THE PAST FEW MONTHS.

Are foreclosure sales (REO sales) a factor in the market? ___ Yes [X] No   If yes, explain (including the trends in listings and sales of foreclosed properties).

Cite data sources for above information.
VALLEY MLS- REALTRACS MLS-PUBLIC RCDS.

Summarize the above information as support for your conclusions in the Neighborhood section of the appraisal report form. If you used any additional information, such as an analysis of pending sales, and/or expired and withdrawn listings, to formulate your conclusions, provide both an explanation and support for your conclusions.
SUBJECT LIES IN AREA OF INCREASED REAL ESTATE ACTIVITY AND HIGHER DEMAND.

If the subject is a unit in a condominium or cooperative project, complete the following:   Project Name:

| Subject Project Data | Prior 7-12 Months | Prior 4-6 Months | Current - 3 Months | Overall Trend | | | |
|---|---|---|---|---|---|---|---|
| Total # of Comparable Sales (Settled) | | | | Increasing | Stable | Declining | |
| Absorption Rate (Total Sales/Months) | | | | Increasing | Stable | Declining | |
| Total # of Active Comparable Listings | | | | Declining | Stable | Increasing | |
| Months of Unit Supply (Total Listings/Ab. Rate) | | | | Declining | Stable | Increasing | |

Are foreclosures sales (REO sales) a factor in the project? ___ Yes ___ No   If yes, indicate the number of REO listings and explain the trends in listings and sales of foreclosed properties.

Summarize the above trends and address the impact on the subject unit and project.

| Signature | | Signature | |
|---|---|---|---|
| Appraiser Name | MARK S. GORDON | Supervisory Name | |
| Company Name | GORDON APPRAISAL GROUP | Company Name | |
| Company Address | 312 Broadway Lane, Madison, AL 35757 | Company Address | |
| State License/Certification # | R00543 State AL | State License/Certification # | State |
| Email Address | gordonappraisalgroup@gmail.com | Email Address | |

Freddie Mac Form 71 March 2009          UAD Version 9/2011 Produced by ClickFORMS Software 800-622-8727 Fannie Mae Form 1004MC March 2009

# USPAP  APPRAISAL  COMPLIANCE  ADDENDUM

This addendum is made to bring this appraisal report into compliance with the revised Uniform Standards of Professional Appraisal Practice (USPAP). This report complies with the most recent changes that are currently in effect from January 1, 2019 -January 1, 2020.

**STATE OF ALA REQUIRED CERTIFICATIONS**  -"This assignment was made subject to the regulations of the Alabama Real Estate Appraiser's Board. The undersigned state licensed real estate appraiser has met the requirements of the Board that allow this report to be regarded as a "Certified Appraisal."

**SCOPE OF THE APPRAISAL:**
An investigation of the general real estate market trends was made for the subject area, an interior and exterior inspection of the subject  property was made and analysis of market data that included both sold and listing data from the subject area.  All data was verified by multiple sources including public records/ MLS/ RE brokers and individuals as needed. The inspection of the subject was made by this appraiser and included both interior and exterior inspections/ measurements and verification of the physical data.  The Cost approach was not completed for this report due to age of subject and depreciation issues that arise with older properties making this approach less meaningful. The Income Approach was also not performed because the subject is not income producing and because of insufficient rental data comps to develop a gross rent multiplier for the subject.

**INTENDED USERS OF APPRAISAL-** This appraisal is for use of the named client and any secondary users that they may deem necessary to secure mortgage financing of the subject property.
**INTENDED USE OF APPRAISAL -** The intended use of this appraisal is to obtain mortgage financing of the subject property.
**CONFIRMATION OF MARKET DATA-** Multiple listing services were used from the Valley MLS for north Alabama and the Real Tracs system for the middle Tenn area. MLS Data is updated daily by both MLS systems.Information is confirmed by these services and by our office/ Public records/ Realtors/Brokers and individuals as needed.
**DIGITAL PICTURES-** Digital pictures have been used in this report that have not been touched up or changed in any way whatsoever.
**COMPLIANCE WITH USPAP-** This report complies with all USPAP Rules, Standards, Guidelines, Advisory Opinions and Supplemental Standards where applicable to this report.
**WARRANTIES / INSPECTIONS:**  No warranties are made or implied as to the condition of the electrical, plumbing, roof, foundation, HVAC or their functioning. A home inspection is needed and advised. Real estate appraisers are not home inspectors, structural engineers, roofers, plumbers, electricians or pest control professionals. Advice from these professionals should be sought. not enlist the help of anyone not performing this appraisal.
**DISCLOSURE OF COMPETENCY:**  I certify that I am competent to perform this appraisal and that I did enlist the help of anyone in performing this appraisal assignment.
**DEFINITION OF MARKET VALUE:**   The normally used and accepted definition of Market Value has been used and not changed.  See top of Certification and Limiting Conditions for this definition.
**WRITTEN-ACCEPTABLE APPRAISAL FORMS -** This appraisal report contains normally used and accepted  forms and is prepared in an appropriate format for this type of appraisal report.
**MARKETING TRENDS-DAYS TO MARKET (DOM) - MARKET BALANCE-** discussed in the body of the report on page one and a Sales Comparison Approach. Days to market are also reported.
**SELLER DEDUCTIONS AND DISCOUNTS-** An analysis of the deductions/ discounts paid by sellers is

**APPRAISER'S E&O INSURANCE**

File No.
Nationwide 866725

HUDSON INSURANCE COMPANY
100 William Street, 5th Floor
New York, NY 10038

HUDSON
INSURANCE GROUP

REAL ESTATE APPRAISERS ERRORS AND OMISSIONS INSURANCE
POLICY DECLARATIONS

NOTICE: THIS IS A "CLAIMS MADE AND REPORTED" POLICY. THIS POLICY REQUIRES THAT A CLAIM
BE MADE AGAINST THE INSURED DURING THE POLICY PERIOD AND REPORTED TO THE INSURER, IN
WRITING, DURING THE POLICY PERIOD OR AUTOMATIC EXTENDED REPORTING PERIOD,

THIS POLICY MAY CONTAIN PROVISIONS WHICH LIMIT THE AMOUNT OF CLAIM EXPENSES THE INSURER IS
RESPONSIBLE TO PAY IN CONNECTION WITH CLAIMS. CLAIM EXPENSES SHALL BE SUBJECT TO ANY
DEDUCTIBLE AMOUNT. THE PAYMENT OF CLAIM EXPENSES WILL REDUCE THE LIMITS OF LIABILITY
STATED IN ITEM 4. OF THE DECLARATIONS. PLEASE READ YOUR POLICY CAREFULLY.

PLEASE READ THIS POLICY CAREFULLY.

Policy Number:      PRA-2AX-1001557                 Renewal of:
1.  Named Insured:         MARK GORDON

2.  Address:               312 BRODWAY LN
                           MADISON, AL 35757

3.  Policy Period:         From:  March 19, 2021      To:    March 19, 2022

    12:01 A.M. Standard Time at the address of the Named Insured as stated in Number 2 above

4.  Limit of Liability                 Each Claim              Policy Aggregate
    Damages Limit of Liability    A.   $1,000,000         B.   $1,000,000
    Claims Expense Limit of
    Liability                     C.   $1,000,000         D.   $1,000,000

5.  Deductible (Inclusive of Claims Expenses):
    5A.   $ 500    Each Claim       5B.    $ 1,000    Aggregate
6.  Policy Premium:     $478              State Taxes/Surcharges:      $0.00

7.  Retroactive Date:   March 19, 2008

8.  Notice to Company:    Notice of a Claim or Potential Claim should be sent to:
                          Hudson Insurance Group

                          100 William Street, 5th Floor
                          New York, NY 10038

                          Fax: 646-216-3786
                          Email: hudsonclaims300@hudsoninsgroup.com
                          On weekends or holidays: 866-546-3981 (Toll Free)

9.  A. Program Administrator:      Riverton Insurance Agency Corp.
                                   OREP- Organization of Real Estate Professionals
    B. Agent/Broker:               Insurance Services

IN WITNESS WHEREOF, We have caused this policy to be executed by our President and our
Corporate Secretary at New York, New York

_____                    _____
President                                   Secretary

PRA100 (01/20)                                                    Page | 1

**Appraiser License Certificate**

File No.
Nationwide  866725

UAD Version 9/2011 Produced by ClickFORMS Software 800-622-8727

Page  25  of  31



# State of Alabama

*This is to certify that*

## Mark S. Gordon

*having given satifactory evidence of the necessary
qualifications required by the laws of the State of Alabama
is licensed to transact business in Alabama as a*

**Certified Residential Real Property Appraiser**

*With all rights, privileges and obligations
appurtenant thereto.*

**LICENSE NUMBER:** R00543
**EXPIRATION DATE:** 9/30/2023

*Lisa Brooks*    Executive Director
ALABAMA REAL ESTATE APPRAISERS BOARD

GORDON APPRAISAL GROUP

## Uniform Residential Appraisal Report

File No.
Nationwide 866725

This report form is designed to report an appraisal of a one-unit property or a one-unit property with an accessory unit; including a unit in a planned unit development (PUD). This report form is not designed to report an appraisal of a manufactured home or a unit in a condominium or cooperative project.

This appraisal report is subject to the following scope of work, intended use, intended user, definition of market value, statement of assumptions and limiting conditions, and certifications. Modifications, additions, or deletions to the intended use, intended user, definition of market value, or assumptions and limiting conditions are not permitted. The appraiser may expand the scope of work to include any additional research or analysis necessary based on the complexity of this appraisal assignment. Modifications or deletions to the certifications are also not permitted. However, additional certifications that do not constitute material alterations to this appraisal report, such as those required by law or those related to the appraiser's continuing education or membership in an appraisal organization, are permitted.

**SCOPE OF WORK:** The scope of work for this appraisal is defined by the complexity of this appraisal assignment and the reporting requirements of this appraisal report form, including the following definition of market value, statement of assumptions and limiting conditions, and certifications. The appraiser must, at a minimum: (1) perform a complete visual inspection of the interior and exterior areas of the subject property, (2) inspect the neighborhood, (3) inspect each of the comparable sales from at least the street, (4) research, verify, and analyze data from reliable public and/or private sources, and (5) report his or her analysis, opinions, and conclusions in this appraisal report.

**INTENDED USE:** The intended use of this appraisal report is for the lender/client to evaluate the property that is the subject of this appraisal for a mortgage finance transaction.

**INTENDED USER:** The intended user of this appraisal report is the lender/client.

**DEFINITION OF MARKET VALUE:** The most probable price which a property should bring in a competitive and open market under all conditions requisite to a fair sale, the buyer and seller, each acting prudently, knowledgeably and assuming the price is not affected by undue stimulus. Implicit in this definition is the consummation of a sale as of a specified date and the passing of title from seller to buyer under conditions whereby: (1) buyer and seller are typically motivated; (2) both parties are well informed or well advised, and each acting in what he or she considers his or her own best interest; (3) a reasonable time is allowed for exposure in the open market; (4) payment is made in terms of cash in U. S. dollars or in terms of financial arrangements comparable thereto; and (5) the price represents the normal consideration for the property sold unaffected by special or creative financing or sales concessions* granted by anyone associated with the sale.

*Adjustments to the comparables must be made for special or creative financing or sales concessions. No adjustments are necessary for those costs which are normally paid by sellers as a result of tradition or law in a market area; these costs are readily identifiable since the seller pays these costs in virtually all sales transactions. Special or creative financing adjustments can be made to the comparable property by comparisons to financing terms offered by a third party institutional lender that is not already involved in the property or transaction. Any adjustment should not be calculated on a mechanical dollar for dollar cost of the financing or concession but the dollar amount of any adjustment should approximate the market's reaction to the financing or concessions based on the appraiser's judgment.

**STATEMENT OF ASSUMPTIONS AND LIMITING CONDITIONS:** The appraiser's certification in this report is subject to the following assumptions and limiting conditions:

1. The appraiser will not be responsible for matters of a legal nature that affect either the property being appraised or the title to it, except for information that he or she became aware of during the research involved in performing this appraisal. The appraiser assumes that the title is good and marketable and will not render any opinions about the title.

2. The appraiser has provided a sketch in this appraisal report to show the approximate dimensions of the improvements. The sketch is included only to assist the reader in visualizing the property and understanding the appraiser's determination of its size.

3. The appraiser has examined the available flood maps that are provided by the Federal Emergency Management Agency (or other data sources) and has noted in this appraisal report whether any portion of the subject site is located in an identified Special Flood Hazard Area. Because the appraiser is not a surveyor, he or she makes no guarantees, express or implied, regarding this determination.

4. The appraiser will not give testimony or appear in court because he or she made an appraisal of the property in question, unless specific arrangements to do so have been made beforehand, or as otherwise required by law.

5. The appraiser has noted in this appraisal report any adverse conditions (such as needed repairs, deterioration, the presence of hazardous wastes, toxic substances, etc.) observed during the inspection of the subject property or that he or she became aware of during the research involved in performing this appraisal. Unless otherwise stated in this appraisal report, the appraiser has no knowledge of any hidden or unapparent physical deficiencies or adverse conditions of the property (such as, but not limited to, needed repairs, deterioration, the presence of hazardous wastes, toxic substances, adverse environmental conditions, etc.) that would make the property less valuable, and has assumed that there are no such conditions and makes no guarantees or warranties, express or implied. The appraiser will not be responsible for any such conditions that do exist or for any engineering or testing that might be required to discover whether such conditions exist. Because the appraiser is not an expert in the field of environmental hazards, this appraisal report must not be considered as an environmental assessment of the property.

6. The appraiser has based his or her appraisal report and valuation conclusion for an appraisal that is subject to satisfactory completion, repairs, or alterations on the assumption that the completion, repairs, or alterations of the subject property will be performed in a professional manner.

**Uniform Residential Appraisal Report**

## APPRAISER'S CERTIFICATION: The Appraiser certifies and agrees that:

1. I have, at a minimum, developed and reported this appraisal in accordance with the scope of work requirements stated in this appraisal report.

2. I performed a complete visual inspection of the interior and exterior areas of the subject property. I reported the condition of the improvements in factual, specific terms. I identified and reported the physical deficiencies that could affect the livability, soundness, or structural integrity of the property.

3. I performed this appraisal in accordance with the requirements of the Uniform Standards of Professional Appraisal Practice that were adopted and promulgated by the Appraisal Standards Board of The Appraisal Foundation and that were in place at the time this appraisal report was prepared.

4. I developed my opinion of the market value of the real property that is the subject of this report based on the sales comparison approach to value. I have adequate comparable market data to develop a reliable sales comparison approach for this appraisal assignment. I further certify that I considered the cost and income approaches to value but did not develop them, unless otherwise indicated in this report.

5. I researched, verified, analyzed, and reported on any current agreement for sale for the subject property, any offering for sale of the subject property in the twelve months prior to the effective date of this appraisal, and the prior sales of the subject property for a minimum of three years prior to the effective date of this appraisal, unless otherwise indicated in this report.

6. I researched, verified, analyzed, and reported on the prior sales of the comparable sales for a minimum of one year prior to the date of sale of the comparable sale, unless otherwise indicated in this report.

7. I selected and used comparable sales that are locationally, physically, and functionally the most similar to the subject property.

8. I have not used comparable sales that were the result of combining a land sale with the contract purchase price of a home that has been built or will be built on the land.

9. I have reported adjustments to the comparable sales that reflect the market's reaction to the differences between the subject property and the comparable sales.

10. I verified, from a disinterested source, all information in this report that was provided by parties who have a financial interest in the sale or financing of the subject property.

11. I have knowledge and experience in appraising this type of property in this market area.

12. I am aware of, and have access to, the necessary and appropriate public and private data sources, such as multiple listing services, tax assessment records, public land records and other such data sources for the area in which the property is located.

13. I obtained the information, estimates, and opinions furnished by other parties and expressed in this appraisal report from reliable sources that I believe to be true and correct.

14. I have taken into consideration the factors that have an impact on value with respect to the subject neighborhood, subject property, and the proximity of the subject property to adverse influences in the development of my opinion of market value. I have noted in this appraisal report any adverse conditions (such as, but not limited to, needed repairs, deterioration, the presence of hazardous wastes, toxic substances, adverse environmental conditions, etc.) observed during the inspection of the subject property or that I became aware of during the research involved in performing this appraisal. I have considered these adverse conditions in my analysis of the property value, and have reported on the effect of the conditions on the value and marketability of the subject property.

15. I have not knowingly withheld any significant information from this appraisal report and, to the best of my knowledge, all statements and information in this appraisal report are true and correct.

16. I stated in this appraisal report my own personal, unbiased, and professional analysis, opinions, and conclusions, which are subject only to the assumptions and limiting conditions in this appraisal report.

17. I have no present or prospective interest in the property that is the subject of this report, and I have no present or prospective personal interest or bias with respect to the participants in the transaction. I did not base, either partially or completely, my analysis and/or opinion of market value in this appraisal report on the race, color, religion, sex, age, marital status, handicap, familial status, or national origin of either the prospective owners or occupants of the subject property or of the present owners or occupants of the properties in the vicinity of the subject property or on any other basis prohibited by law.

18. My employment and/or compensation for performing this appraisal or any future or anticipated appraisals was not conditioned on any agreement or understanding, written or otherwise, that I would report (or present analysis supporting) a predetermined specific value, a predetermined minimum value, a range or direction in value, a value that favors the cause of any party, or the attainment of a specific result or occurrence of a specific subsequent event (such as approval of a pending mortgage loan application).

19. I personally prepared all conclusions and opinions about the real estate that were set forth in this appraisal report. If I relied on significant real property appraisal assistance from any individual or individuals in the performance of this appraisal or the preparation of this appraisal report, I have named such individual(s) and disclosed the specific tasks performed in this appraisal report. I certify that any individual so named is qualified to perform the tasks. I have not authorized anyone to make a change to any item in this appraisal report; therefore, any change made to this appraisal is unauthorized and I will take no responsibility for it.

20. I identified the lender/client in this appraisal report who is the individual, organization, or agent for the organization that ordered and will receive this appraisal report.

GORDON APPRAISAL GROUP
File No.
Nationwide **866725**

## Uniform Residential Appraisal Report

21. The lender/client may disclose or distribute this appraisal report to: the borrower; another lender at the request of the borrower; the mortgagee or its successors and assigns; mortgage insurers; government sponsored enterprises; other secondary market participants; data collection or reporting services; professional appraisal organizations; any department, agency, or instrumentality of the United States; and any state, the District of Columbia, or other jurisdictions; without having to obtain the appraiser's or supervisory appraiser's (if applicable) consent. Such consent must be obtained before this appraisal report may be disclosed or distributed to any other party (including, but not limited to, the public through advertising, public relations, news, sales, or other media).

22. I am aware that any disclosure or distribution of this appraisal report by me or the lender/client may be subject to certain laws and regulations. Further, I am also subject to the provisions of the Uniform Standards of Professional Appraisal Practice that pertain to disclosure or distribution by me.

23. The borrower, another lender at the request of the borrower, the mortgagee or its successors and assigns, mortgage insurers, government sponsored enterprises, and other secondary market participants may rely on this appraisal report as part of any mortgage finance transaction that involves any one or more of these parties.

24. If this appraisal report was transmitted as an "electronic record" containing my "electronic signature," as those terms are defined in applicable federal and/or state laws (excluding audio and video recordings), or a facsimile transmission of this appraisal report containing a copy or representation of my signature, the appraisal report shall be as effective, enforceable and valid as if a paper version of this appraisal report were delivered containing my original hand written signature.

25. Any intentional or negligent misrepresentation(s) contained in this appraisal report may result in civil liability and/or criminal penalties including, but not limited to, fine or imprisonment or both under the provisions of Title 18, United States Code, Section 1001, et seq., or similar state laws.

### SUPERVISORY APPRAISER'S CERTIFICATION: The Supervisory Appraiser certifies and agrees that:

1. I directly supervised the appraiser for this appraisal assignment, have read the appraisal report, and agree with the appraiser's analysis, opinions, statements, conclusions, and the appraiser's certification.

2. I accept full responsibility for the contents of this appraisal report including, but not limited to, the appraiser's analysis, opinions, statements, conclusions, and the appraiser's certification.

3. The appraiser identified in this appraisal report is either a sub-contractor or an employee of the supervisory appraiser (or the appraisal firm), is qualified to perform this appraisal, and is acceptable to perform this appraisal under the applicable state law.

4. This appraisal report complies with the Uniform Standards of Professional Appraisal Practice that were adopted and promulgated by the Appraisal Standards Board of The Appraisal Foundation and that were in place at the time this appraisal report was prepared.

5. If this appraisal report was transmitted as an "electronic record" containing my "electronic signature," as those terms are defined in applicable federal and/or state laws (excluding audio and video recordings), or a facsimile transmission of this appraisal report containing a copy or representation of my signature, the appraisal report shall be as effective, enforceable and valid as if a paper version of this appraisal report were delivered containing my original hand written signature.

| APPRAISER | SUPERVISORY APPRAISER (ONLY IF REQUIRED) |
|---|---|
| Signature | Signature |
| Name **MARK S. GORDON** | Name |
| Company Name **GORDON APPRAISAL GROUP** | Company Name |
| Company Address **312 Broadway Lane** | Company Address |
| **Madison, AL 35757** | |
| Telephone Number **256-797-0054** | Telephone Number |
| Email Address **gordonappraisalgroup@gmail.com** | Email Address |
| Date of Signature and Report **09/03/2021** | Date of Signature |
| Effective Date of Appraisal **08/26/2021** | State Certification # |
| State Certification # **R00543** | or State License # |
| or State License # | State |
| or Other (describe) State # | Expiration Date of Certification or License |
| State **AL** | |
| Expiration Date of Certification or License **09/30/2023** | |

ADDRESS OF PROPERTY APPRAISED
**10 OLD STONEBANK LN NW**
**HUNTSVILLE, AL 35806**

APPRAISED VALUE OF SUBJECT PROPERTY $ **1,300,000**
LENDER/CLIENT
Name **NATIONWIDE PROPERTY & APPRAISAL SERVICES**
Company Name **ANGEL OAK MORTGAGE SOLUTIONS LLC**
Company Address **980 HAMMOND DR SUITE 850**
**ATLANTA, GA 30328**
Email Address

SUBJECT PROPERTY
☐ Did not inspect subject property
☐ Did inspect exterior of subject property from street
Date of Inspection
☐ Did inspect interior and exterior of subject property
Date of Inspection

COMPARABLE SALES
☐ Did not inspect exterior of comparable sales from street
☐ Did inspect exterior of comparable sales from street
Date of Inspection

**UNIFORM APPRAISAL DATASET (UAD)**
**Property Condition and Quality Rating Definitions**

File No.
Nationwide 866725

---

## Requirements - Condition and Quality Ratings Usage

Appraisers must utilize the following standardized condition and quality ratings within the appraisal report.

### Condition Ratings and Definitions

**C1**
The improvements have been recently constructed and have not been previously occupied. The entire structure and all components are new and the dwelling features no physical depreciation.

**Note:** *Newly constructed improvements that feature recycled or previously used materials and/or components can be considered new dwellings provided that the dwelling is placed on a 100 percent new foundation and the recycled materials and the recycled components have been rehabilitated/remanufactured into like-new condition. Improvements that have not been previously occupied are not considered "new" if they have significant physical depreciation (that is, newly constructed dwellings that have been vacant for an extended period of time without adequate maintenance or upkeep).*

**C2**
The improvements feature no deferred maintenance, little or no physical depreciation, and require no repairs. Virtually all building components are new or have been recently repaired, refinished, or rehabilitated. All outdated components and finishes have been updated and/or replaced with components that meet current standards. Dwellings in this category are either almost new or have been recently completely renovated and are similar in condition to new construction.

**Note:** *The improvements represent a relatively new property that is well maintained with no deferred maintenance and little or no physical depreciation, or an older property that has been recently completely renovated.*

**C3**
The improvements are well maintained and feature limited physical depreciation due to normal wear and tear. Some components, but not every major building component, may be updated or recently rehabilitated. The structure has been well maintained.

**Note:** *The improvement is in its first-cycle of replacing short-lived building components (appliances, floor coverings, HVAC, etc.) and is being well maintained. Its estimated effective age is less than its actual age. It also may reflect a property in which the majority of short-lived building components have been replaced but not to the level of a complete renovation.*

**C4**
The improvements feature some minor deferred maintenance and physical deterioration due to normal wear and tear. The dwelling has been adequately maintained and requires only minimal repairs to building components/mechanical systems and cosmetic repairs. All major building components have been adequately maintained and are functionally adequate.

**Note:** *The estimated effective age may be close to or equal to its actual age. It reflects a property in which some of the short-lived building components have been replaced, and some short-lived building components are at or near the end of their physical life expectancy; however, they still function adequately. Most minor repairs have been addressed on an ongoing basis resulting in an adequately maintained property.*

**C5**
The improvements feature obvious deferred maintenance and are in need of some significant repairs. Some building components need repairs, rehabilitation, or updating. The functional utility and overall livability are somewhat diminished due to condition, but the dwelling remains useable and functional as a residence.

**Note:** *Some significant repairs are needed to the improvements due to the lack of adequate maintenance. It reflects a property in which many of its short-lived building components are at the end of or have exceeded their physical life expectancy but remain functional.*

**C6**
The improvements have substantial damage or deferred maintenance with deficiencies or defects that are severe enough to affect the safety, soundness, or structural integrity of the improvements. The improvements are in need of substantial repairs and rehabilitation, including many or most major components.

**Note:** *Substantial repairs are needed to the improvements due to the lack of adequate maintenance or property damage. It reflects a property with conditions severe enough to affect the safety, soundness, or structural integrity of the improvements.*

**GORDON APPRAISAL GROUP**

| | |
|---|---|
| **UNIFORM APPRAISAL DATASET (UAD)** | File No. |
| **Property Condition and Quality Rating Definitions** | Nationwide **866725** |

## Quality Ratings and Definitions

**Q1**

Dwellings with this quality rating are usually unique structures that are individually designed by an architect for a specified user. Such residences typically are constructed from detailed architectural plans and specifications and feature an exceptionally high level of workmanship and exceptionally high-grade materials throughout the interior and exterior of the structure. The design features exceptionally high-quality exterior refinements and ornamentation, and exceptionally high-quality interior refinements. The workmanship, materials, and finishes throughout the dwelling are exceptionally high quality.

**Q2**

Dwellings with this quality rating are often custom designed for construction on an individual property owner's site. However, dwellings in this quality grade are also found in high-quality tract developments featuring residences constructed from individual plans or from highly modified or upgraded plans. The design features detailed, high-quality exterior ornamentation, high-quality interior refinements, and detail. The workmanship, materials, and finishes throughout the dwelling are generally of high or very high quality.

**Q3**

Dwellings with this quality rating are residences of higher quality built from individual or readily available designer plans in above-standard residential tract developments or on an individual property owner's site. The design includes significant exterior ornamentation and interiors that are well finished. The workmanship exceeds acceptable standards and many materials and finishes throughout the dwelling have been upgraded from "stock" standards.

**Q4**

Dwellings with this quality rating meet or exceed the requirements of applicable building codes. Standard or modified standard building plans are utilized and the design includes adequate fenestration and some exterior ornamentation and interior refinements. Materials, workmanship, finish, and equipment are of stock or builder grade and may feature some upgrades.

**Q5**

Dwellings with this quality rating feature economy of construction and basic functionality as main considerations. Such dwellings feature a plain design using readily available or basic floor plans featuring minimal fenestration and basic finishes with minimal exterior ornamentation and limited interior detail. These dwellings meet minimum building codes and are constructed with inexpensive, stock materials with limited refinements and upgrades.

**Q6**

Dwellings with this quality rating are of basic quality and lower cost; some may not be suitable for year-round occupancy. Such dwellings are often built with simple plans or without plans, often utilizing the lowest quality building materials. Such dwellings are often built or expanded by persons who are professionally unskilled or possess only minimal construction skills. Electrical, plumbing, and other mechanical systems and equipment may be minimal or non-existent. Older dwellings may feature one or more substandard or non-conforming additions to the original structure.

## Requirements - Definitions of Not Updated, Updated and Remodeled

### Not Updated

Little or no updating or modernization. This description includes, but is not limited to, new homes.

Residential properties of fifteen years of age or less often reflect an original condition with no updating, if no major components have been replaced or updated. Those over fifteen years of age are also considered not updated if the appliances, fixtures, and finishes are predominantly dated. An area that is 'Not Updated' may still be well maintained and fully functional, and this rating does not necessarily imply deferred maintenance or physical/functional deterioration.

### Updated

The area of the home has been modified to meet current market expectations. These modifications are limited in terms of both scope and cost.

An updated area of the home should have an improved look and feel, or functional utility. Changes that constitute updates include refurbishment and/or replacing components meet existing market expectations. Updates do *not* include significant alterations to the existing structure.

### Remodeled

Significant finish and/or structural changes have been made that increase utility and appeal through complete replacement and/or expansion.

A remodeled area reflects fundamental changes that include multiple alterations. These alterations may include some or all of the following: replacement of a major component (cabinet(s), bathtub, or bathroom tile), relocation of plumbing/gas fixtures/appliances, significant structural alterations (relocating walls, and/or the addition of square footage). This would include a complete gutting and rebuild.

### Explanation of Bathroom Count

Three-quarter baths are counted as a full bath in all cases. Quarter baths (baths that feature only a toilet) are not included in the bathroom count. The number of full and half baths is reported by separating the two values using a period, where the full bath count is represented to the left of the period and the half bath count is represented to the right of the period.

Example:
3.2 indicates three full baths and two half baths.

**GORDON APPRAISAL GROUP**

## UNIFORM APPRAISAL DATASET (UAD)
### Property Description Abbreviations Used In This Report

File No.
Nationwide 866725

| Abbreviation | Full Name | May Appear In These Fields |
|---|---|---|
| A | Adverse | Location & View |
| ac | Acres | Area, Site |
| AdjPrk | Adjacent to Park | Location |
| AdjPwr | Adjacent to Power Lines | Location |
| ArmLth | Arms Length Sale | Sales or Financing Concessions |
| AT | Attached Structure | Design (Style) |
| B | Beneficial | Location & View |
| ba | Bathroom(s) | Basement & Finished Rooms Below Grade |
| br | Bedroom | Basement & Finished Rooms Below Grade |
| BsyRd | Busy Road | Location |
| c | Contracted Date | Date of Sale/Time |
| Cash | Cash | Sale or Financing Concessions |
| Comm | Commercial Influence | Location |
| Conv | Conventional | Sale or Financing Concessions |
| cp | Carport | Garage/Carport |
| CrtOrd | Court Ordered Sale | Sale or Financing Concessions |
| CtySky | City View Skyline View | View |
| CtyStr | City Street View | View |
| cv | Covered | Garage/Carport |
| DOM | Days On Market | Data Sources |
| DT | Detached Structure | Design (Style) |
| dw | Driveway | Garage/Carport |
| e | Expiration Date | Date of Sale/Time |
| Estate | Estate Sale | Sale or Financing Concessions |
| FHA | Federal Housing Administration | Sale or Financing Concessions |
| g | Garage | Garage/Carport |
| ga | Attached Garage | Garage/Carport |
| gbi | Built-In Garages | Garage/Carport |
| gd | Detached Garage | Garage/Carport |
| GlfCse | Golf Course | Location |
| Glfvw | Golf Course View | View |
| GR | Garden | Design (Style) |
| HR | High Rise | Design (Style) |
| in | Interior Only Stairs | Basement & Finished Rooms Below Grade |
| Ind | Industrial | Location & View |
| Listing | Listing | Sales or Financing Concessions |
| Lndfl | Landfill | Location |
| LtdSght | Limited Sight | View |
| MR | Mid Rise | Design (Style) |
| Mtn | Mountain View | View |
| N | Neutral | Location & View |
| NonArm | Non-Arms Length Sale | Sale or Financing Concessions |
| o | Other | Basement & Finished Rooms Below Grade |
| O | Other | Design (Style) |
| op | Open | Garage/Carport |
| Prk | Park View | View |
| Pstrl | Pastoral View | View |
| PubTrn | Public Transportation | Location |
| PwrLn | Power Lines | View |
| Relo | Relocation Sale | Sale or Financing Concessions |
| REO | REO Sale | Sale or Financing Concessions |
| Res | Residential | Location & View |
| RH | USDA - Rural Housing | Sale or Financing Concessions |
| rr | Recreational (Rec) Room | Basement & Finished Rooms Below Grade |
| RT | Row or Townhouse | Design (Style) |
| s | Settlement Date | Date of Sale/Time |
| SD | Semi-detached Structure | Design (Style) |
| Short | Short Sale | Sale or Financing Concessions |
| sf | Square Feet | Area, Site, Basement |
| sqm | Square Meters | Area, Site |
| Unk | Unknown | Date of Sale/Time |
| VA | Veterans Administration | Sale or Financing Concessions |
| w | Withdrawn Date | Date of Sale/Time |
| wo | Walk Out Basement | Basement & Finished Rooms Below Grade |
| Woods | Woods View | View |
| Wtr | Water View | View |
| WtrFr | Water Frontage | Location |
| wu | Walk Up Basement | Basement & Finished Rooms Below Grade |
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |

FILED
2025 Nov-26  PM 05:05
U.S. DISTRICT COURT
N.D. OF ALABAMA

AO 467 (Rev. 01/09) Order Requiring a Defendant to Appear in the District Where Charges are Pending and Transferring Bail

# UNITED STATES DISTRICT COURT
### for the
### Northern District of Alabama

| | |
|---|---|
| United States of America<br>v.<br><br>Brian Curtis Raymond<br><br>*Defendant* | )<br>)<br>)<br>)<br>)<br>) |

Case No.    5:25-mj-1215-HNJ

Charging District:    Middle District of Florida-Tampa

Charging District's Case No.    8:25-cr-530-CEH-LSG

## ORDER REQUIRING A DEFENDANT TO APPEAR IN THE DISTRICT
## WHERE CHARGES ARE PENDING AND TRANSFERRING BAIL

After a hearing in this court, the defendant is released from custody and ordered to appear in the district court where the charges are pending to answer those charges.  If the time to appear in that court has not yet been set, the defendant must appear when notified to do so.  Otherwise, the time and place to appear in that court are:

| Place:  Sam M. Gibbons U.S. Courthouse<br>801 North Florida Avenue<br>Tampa, Florida 33602 | Courtroom No.:    12A |
|---|---|
| | Date and Time:    Thursday, December 4, 2025 at 3:00 p.m. |

The clerk is ordered to transfer any bail deposited in the registry of this court to the clerk of the court where the charges are pending (if applicable).

**DONE** this 26th day of November, 2025.

HERMAN N. JOHNSON, JR.
UNITED STATES MAGISTRATE JUDGE